THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* THE CITY OF HORNELL, NEW YORK, Respondent.

Fourth Department, January 5, 1939.

*John J. Bennett, Jr., Attorney-General* [*John M. Stull* and *Hugh Reilly, Assistant Attorneys-General,* of counsel], for the appellant.

*Harry L. Allen, City Attorney,* for the respondent.

Judgment affirmed, with costs, on the opinion of WHEELER, J., at the Trial Term.

All concur. Present — SEARS, P. J., CROSBY, LEWIS, CUNNINGHAM and TAYLOR, JJ.

The following is the opinion of WHEELER, J., rendered at Trial Term:

WHEELER, J. This action is brought to recover $5,570 and interest alleged to be due the State of New York for fines collected by the city of Hornell in sixty-one cases arising in that city between the 4th day of July, 1924, and the 2d day of September, 1932, for alleged violations of section 133 of the City Charter, which offenses, it is claimed, were in fact violations, or were associated with violations, of the State Highway Law and the State Vehicle and Traffic Law covering the crime of operating a motor vehicle while intoxicated.

The fines in question were imposed by the Recorder's Court of the city of Hornell, which court was created by the Hornell City Charter, chapter 288 of the Laws of 1906.

A part of that chapter, section 133, provides that "All persons who shall be intoxicated in said city under such circumstances as to amount to a violation of public decency * * * shall be deemed and are hereby declared to be disorderly persons, and may be proceeded against and punished accordingly." Section 132 of the charter authorizes the recorder to punish such an offender by a fine not to exceed $100, and section 138 provides that such fines shall be paid over to the chamberlain of the city.

In each instance the information charged a violation of section 133 of the charter, without in any manner referring to the use of public highways by motor vehicles.

Of these sixty-one cases there are fifty-six which arose under the administration of Recorder RATHBUN. In each of these fifty-six cases the docket discloses that the defendants were put upon probation, and deprived of the use of their cars during the probationary period. The fines imposed ranged from twenty-five dollars to one hundred dollars.

From these records, and the evidence of many of those defendants who testified on the trial of this case, it convincingly appears that the police officers had ample proof in many instances that the defendants were guilty of drunken driving, when the information charging public intoxication only was made and filed. In fact there is little room for doubt that the police officers habitually ignored information of drunken driving, and elected to prosecute such cases for public intoxication under section 133 of the charter, in order to keep the fines for the city.

Under this state of facts the State contends that the offenses in question being in fact violations of the Highway Law, or the Vehicle and Traffic Law of the State of New York, the violation should have been prosecuted under the State statutes, and the fine paid to the Comptroller of the State.

Former section 281 of the Highway Law (as amd. by Laws of 1924, chap. 360) provided that "Except as hereby otherwise expressly provided" the Highway Law shall be exclusively controlling, and section 10 of the Vehicle and Traffic Law contains a similar provision relating to that act. Former section 288 of the Highway Law (now section 54 of the Vehicle and Traffic Law) provided that no ordinance, rule or regulation contrary to or in any wise inconsistent with the provisions of that article, then in force, or thereafter enacted, should have any effect.

Obviously the plain purpose and intention of these statutes was to formulate a uniform law throughout the State, to take the place of all previous statutes, ordinances or rules regulating the use of motor vehicles upon the streets and highways of this State.

(*City of Buffalo* v. *Lewis*, 192 N. Y. 193; *People* v. *Braun*, 100 Misc. 343; *People* v. *President, etc., of Village of Ossining*, 238 App. Div. 684.)

As heretofore noted, section 133 of the Hornell charter contains no provision in any way relating to motor vehicles, or their use on the highway. Hence it necessarily follows that there is no inconsistency or duplication between the section of the charter and the State law. In fact it is not claimed by the State that the charter provision in question has been superseded by the State laws. Its validity is not here challenged. On the contrary, the State contends that the prosecutions in question should have been under the State statutes rather than under the charter provision.

The State bases its claim to the fines collected on former section 291 of the Highway Law (as amd. by Laws of 1924, chap. 360) and section 73 of the Vehicle and Traffic Law (effective 1929), wherein it is provided that all fines, penalties and forfeitures collected for violation of any of the provisions of that article, or of " *any act in relation to the use of the public highways by motor vehicles,*" now in force or hereafter enacted, should be paid to the Treasurer (Comptroller under Vehicle and Traffic Law, § 73) of the State.

Again it is apparent that section 133 of the charter is not an " *act in relation to the use of the public highways by motor vehicles.*"

I am of the opinion that the Legislature intended that the " act " referred to in section 73 must contain some expressed reference to the use of the public highways by motor vehicles. This view is consistent with an opinion rendered by the present Attorney-General in 1932 wherein he stated: " The choice of the expression ' use of the public highways by motor vehicles ' clearly indicates that the Legislature intended that the act shall be identified by its reference to the use of ' public highways ' by ' motor vehicles.' In short, it seems that the ' act ' must refer expressly to the words ' public highways ' and ' motor vehicles.' " (Opinions of Atty.-Gen. [1932] 125.)

Accordingly I hold that section 133 of the charter is not such an act as was contemplated by the Legislature when it enacted section 73 of the Vehicle and Traffic Law and section 291 of the Highway Law, and it, therefore, follows that the fines collected under the charter provision are not payable to the State.

The State urges that its position is sustained in the case of *People* v. *President, etc., of Village of Ossining* (238 App. Div. 684; affd., 264 N. Y. 574). That case, however, is readily distinguishable from the case at bar. In that case the defendants were charged with violation of village ordinances relating to the operation of automobiles, and all other vehicles on the public streets of the

village. Such ordinances were clearly contemplated by section 291 of the Highway Law and section 73 of the Vehicle and Traffic Law, and, of course, fines imposed thereunder should have been paid to the State. This type of ordinance was no longer enforcible after the enactment of the highway laws above referred to.

In *People* v. *Strohm* (224 App. Div. 309) the court held that where the justices of the peace in a town assume to act under section 1530 of the Penal Law (defining public nuisance) and prosecute under that section when the prosecution should have been under the State Law, the fines should be turned over to the State Treasurer. But in that case the various informations show that the violations consisted of such as reckless driving, driving after dark without lights, and other matters relating to the operation of motor vehicles upon the highways.

In the instant cases, unlike those above cited, the information failed to set forth facts showing the violation of any act relating to highways, or motor vehicles, neither did the charter provision under which the convictions were had contain any similar provision. These defendants were legally convicted under a valid charter provision defining public intoxication or disorderly conduct, and consequently the fines rightfully belong to the city.

It may be true as the State contends, that some of these defendants were also guilty of drunken driving. In such instances the defendants could have been rearrested and charged with that crime notwithstanding the convictions under the charter. It may be true that the police officials were derelict in the performance of their official duties by habitually and willfully refusing to prosecute drunken drivers under the State statute, but on the contrary electing to proceed under the local charter.

The State of New York through its Legislature has seen fit to enact what may be termed adequate and comprehensive measures to meet the serious menace of drunken driving of motor vehicles. A conviction under these statutes involves not only drastic penalties, but also the revocation of a driver's license, and various other important considerations in connection with the application for restoration of the license to drive. It would seem that there is a clear duty upon local officers to uphold the laws of the State, not to ignore them, and prosecute for a minor offense when the proof at hand is adequate to sustain a more serious charge. To be sure there is and ought to be a wide discretion left with the local officials as to the particular offense to be charged in any given case, but this discretion should not be habitually and systematically abused. Not even the desire to divert the fines to the city treasury justifies this method of procedure. If one locality of the State may thus

evade the mandates of the statute by resorting to some local ordinance, then it follows that every other locality may do the same, and thus the State law, designed to deal with this serious menace, will have been substantially destroyed. The maintenance of the integrity of the laws of the State is of paramount importance.

Whatever the ultimate facts may prove to be in reference to the State's claim of bad faith and dereliction on the part of the local officers, such considerations are not before the court in this case. We are here confronted with a strictly statutory problem, and under the present statutes of the State it must be held that the fines in question were properly payable to the city rather than to the State. If the practice of prosecuting drunken drivers under local laws defining mere public intoxication instead of under the State laws, is to be curtailed, the Legislature, not the court must provide the remedy.

The complaint should be dismissed, with costs.

Judgment may enter accordingly.