THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* INTERSTATE DRESS CARRIERS, INC., et al., Appellants.

Court of Special Sessions of the City of New York, Appellate Part, First Department, March 25, 1953.

884

*Samuel Schaeffer* for appellants.

*Frank S. Hogan, District Attorney* (*Richard G. Denzer* and *Paul A. Stone* of counsel), for respondent.

*Per Curiam.* Appellants here challenge four judgments of the Manhattan Traffic Court finding them guilty of violating section 190 of the Traffic Regulations of the City of New York (also known as Special Midtown Truck Regulations) in that: " On June 13, 1951, the defendant did *park* a vehicle between the hours of 7:25 A.M. and 2:00 P.M. on 224 West 35th Street, a public highway in the County of New York, City and State of New York, contrary to restrictions properly posted on authorized signs of the Police Department which indicated special parking regulations on such street in violation of Article 2, Section 10, Subdivision i of the Traffic Regulations adopted by

the Traffic Commission of the City of New York, contrary to Special Midtown Truck Regulation, Article 15, Section 190." (Italics supplied.)*

The regulation, so far as here material, provides: " Between the hours of 8:00 A.M. to 6:00 P.M. daily except Sundays from 14th to 59th Streets, 3rd to 9th Avenues, all inclusive, in the Borough of Manhattan * * * No driver shall stop or stand a vehicle or combination of vehicles for the purpose of loading or unloading merchandise or materials in any one block of streets herein designated, for a period of more than two hours. A vehicle or combination of vehicles not being expeditiously loaded or unloaded is deemed to constitute a parked vehicle subject to parking regulations applicable to that particular location."

The four cases were submitted below on a single agreed statement of facts in which it was stipulated that defendants owned the trucks involved, that same were at the locations mentioned for a period in excess of two hours, and that they were being expeditiously loaded and unloaded.

Under this stipulation, the substantial question presented for our determination is whether a vehicle may properly be said to be " parked " while it is being loaded and/or unloaded with reasonable promptness.

Appellants, arguing that it cannot, refer us to subdivision 20 of section 2 of the Vehicle and Traffic Law which defines the words " Park ", " parking " or " parked " as meaning: " the stopping of a motor vehicle * * * upon any public high-way and leaving such motor vehicle * * * unattended by a person capable of operating it, for a period longer than necessary to load or unload passengers or freight. This definition shall apply to all ordinances made by local authorities as provided by this chapter, notwithstanding the provisions of any local ordinance made prior to the adoption of this subdivision."

It may no longer be doubted that the Vehicle and Traffic Law has as its underlying purpose the establishment throughout the State of " a uniform system regulating the operation and regulation of motor vehicles and their use ". Nor may it be questioned that except where otherwise specifically provided, the provisions of this chapter are applicable to the City of

---

* Two of the four complaints (Nos. 279568 and 279566) charge that defendant " did violate provisions of Article 15, Section 190 by parking more than two (2) hours ".

New York (*Great Atlantic & Pacific Tea Co.* v. *City of New York,* 173 Misc. 470).

The power granted by section 54 of the Vehicle and Traffic Law to the City of New York to enact " traffic regulations with respect to the operation of motor vehicles " is, we think, clearly restricted by the statement in subdivision 20 of section 2 that the definition there set forth " shall apply to all ordinances made by local authorities as provided by this chapter." While reference is made to " ordinances " rather than to " traffic regulations ", we cannot believe that it was intended by the Legislature to grant broader scope respecting the latter than was authorized regarding the former.

It seems, then, irresistible that the propriety of the convictions here being reviewed must be judged in terms of the definition contained in subdivision 20 of section 2 of the Vehicle and Traffic Law.

When so judged it seems to us clear that, in light of the stipulation that defendants' vehicles were being expeditiously loaded and unloaded, same were not " parked " at the times and places set forth in the several summonses. The regulation itself, it should be noted, defines a " parked vehicle " as one " not being expeditiously loaded or unloaded ". Conversely, one which *is* being expeditiously loaded or unloaded can hardly be described as " parked ". The judgments of conviction should therefore be reversed on the law and the facts and the complaints dismissed.

It may, in passing, be observed that the summonses do *not* charge defendants with violating section 190 in that they did " stop or stand a vehicle or combination of vehicles for the purpose of loading or unloading merchandise or materials in any one block of streets herein designated, for a period of more than two hours ". A far different question would be here presented if that were the charge for then, if the regulation be assumed valid, conviction would automatically flow from a finding that the vehicles had stopped or stood in a particular location for more than two hours.

We entertain grave misgivings as to the validity of section 190 to the extent that same purports to make the *sole* test of its violation the simple fact of stopping and standing for more than two hours. However, since that is not the charge here, we leave determination of that precise question for another case.

KOZICKE, P. J., FARRELL and LOSCALZO, JJ., concur.

Judgments reversed.