Jambs Randall Creel, M.
The defendant, while vending ice cream from a Good Humor ice cream pushcart at approximately 4:40 p.m. on Wednesday, April 3, 1957 in the public highway at a point outside of 88 Wall Street, was served with a ‘‘ parking ’ ’ summons by a police officer for 1 ‘ parking contrary to posting on signs ” alleging a violation of section 15 of the Traffic Regulations of the City of New York. Nearby on a sidewalk, a sign affixed to a stanchion stated “No Parking 8 a.m. to 6 p.m., Monday to Friday, Department of Traffic.”
Section 15 of the Traffic Regulations of New York City provides : 1 ‘ When official signs have been posted prohibiting, restricting, or limiting the stopping, standing or parking of vehicles, no person shall stop, stand or park any vehicle in violation of the restrictions stated on such signs.”
The defendant moved to dismiss on the ground that this provision of the Traffic Regulations is invalid when applied to pushcarts or any other nonmotor driven vehicle. It is contended by the defendant that no regulation promulgated by the city can contravene or vary the general law of the State as to “ Parking ” set out in the general Vehicle and Traffic Law (§2, subd. 20) wherein “ Parking ” is clearly so defined as to limit its application to motor driven vehicles only, and hence cannot be extended by municipal regulation to pushcarts or other nonmotor driven vehicles. This section of the general law provides:
1 ‘ ‘ Park, ’ ‘ parking ’ or ‘ parked ’ shall mean the stopping of a motor vehicle or motor cycle upon any public highway and leaving such motor vehicle or motor cycle unattended by a person capable of operating it, for a period longer than necessary to load or unload passengers or freight. This definition shall apply to all ordinances made by local authorities as provided by this chapter, notwithstanding the provisions of any local ordinance made prior to the adoption of this subdivision.”
As stated above the summons here involved was issued for “ Parking ” a pushcart which is conceded to be neither a motor vehicle nor a motor cycle nor any other type of vehicle to which this definition of parking can properly be applied.
*955 In further support of its position the defendant cites the case of City of Rochester v. Quine (171 Misc. 598) in which the court held that the attempt by the City of Rochester to enact a parking ordinance which related to pushcarts was contrary to the State Vehicle and Traffic Law (§2, subd. 20) and was void, stating in part (pp. 600-601): “ In this conflict of definition of parking, therefore, the definition set forth in section 2 of the Vehicle and Traffic Law must prevail. * * * The attempt, therefore, by the City of Rochester to enact a parking ordinance which relates to vehicles not included in the definition in section 2 of the Vehicle and Traffic Law is contrary to the State statute and as to any vehicles not included in the state’s definition is void. * * * Information dismissed.”
While this decision is of the City Court of Rochester, not of record, and hence not binding upon a court of this city, it is nonetheless entitled to great weight being based as it is upon the reasoning of Justice Wheeler in People v. City of Hornell (256 App. Div. 113 and cases cited therein). Furthermore, the restrictiveness of the definition contained in subdivision 20 of section 2 of the Vehicle and Traffic Law upon the power of the City of New York to enact traffic regulations pursuant to the grant of power to this city by section 54 of that law has been recognized by the Court of Special Sessions of this city, Appellate Part, First Judicial Department, in People v. Interstate Dress Carriers (203 Misc. 883). Furthermore, the reasoning of those cases that a general policy of the State may not be ignored by municipal regulation unless it is specifically empowered so to do in clear and explicit terms is well founded in our law. (Jewish Consumptives’ Relief Soc. v. Town of Woodbury, 230 App. Div. 228, affd. 256 N. Y. 619; People ex rel. Kieley v. Lent, 166 App. Div. 550, affd. 215 N. Y. 626; Great Atlantic & Pacific Tea Co. v. City of New York, 173 Misc. 470; People v. City of Hornell, supra; People v. Marcello, 25 N. Y. S. 2d 533.)
It is recognized that the defendant’s motion to dismiss is based upon cogent and weighty authority which must control unless they can be validly distinguished.
Although the point was not raised in argument or briefs, it must be noted that the limiting definition of parking contained in subdivision 20 of section 2 of the Vehicle and Traffic Law upon which the defendant’s motion and authorities are based, itself contains the further limiting clause, ‘‘ This definition shall apply to all ordinances made by local authorities as provided by this chapter ” (italics supplied) which language would appear to indicate a legislative intent to restrict the limitation *956 of this definition of parking to those local ordinances based upon those grants of authority to municipalities made only by the Vehicle and Traffic Law, and not to the legislative grants of authority made by other statutes or enactments. It is noted that those cases upon which the defendant principally relies involved municipal ordinances which were considered by the courts deciding them as being issued solely pursuant to the grants of authority contained in the Vehicle and Traffic Law. (City of Rochester v. Quine, supra; People v. Interstate Dress Carriers, supra.) Hence, these cases are not authority for the proposition that this definition of parking is a limitation upon the grants of authority over traffic contained in other and different statutes or legislative enactments such as the New York City Charter.
The New York City Charter has not only a statutory basis (L. 1936, ch. 483; L. 1934, ch. 867; L. 1937, ch. 929) and has been ratified by the ultimate sovereign people by referendum, but it has roots extending back through history to the Montgomery Charter of 1730, the Dongan Charter of 1686, to the charter granted by the States General of the Dutch Republics in 1652 and which was delivered to the inhabitants of the then New Amsterdam in 1653. Furthermore, the Charter of New York is a Home Rule Charter under the provisions of chapter 363 of the Laws of 1924, chapter 76 of the Consolidated Laws, City Home Rule Law (§ 1 et seq.) and the Constitution of New York State (art. XII, subd. 11 renum. art. IX in 1938).
It should also be noted of the two legislative enactments alleged by the defendant to be in conflict, the Charter of New York City is not only the more recent, but it is also in the nature of special legislation to meet the peculiar and very special needs of this metropolitan area.
The New York City Charter by section 435 of chapter 18, grants very broad powers to those city officials charged with the regulation of traffic within the city. This section is indeed an express grant of special authority. The Traffic Regulations of New York City are duly issued pursuant to those powers granted by the New York City Charter and the Traffic Regulations are not based upon the Vehicle and Traffic Law or any grant of authority contained therein. Indeed, the City of New York, by virtue of its charter, has been granted authority over its traffic problems independent of and exceeding that previously granted by the Vehicle and Traffic Law. Charter powers once granted are not to be lightly abrogated.
Since the State Legislature acting pursuant to the Constitution and the People, the ultimate sovereign, by referendum, *957 having conferred upon the city by charter the broad and independent grant of powers over that most vital local affair of traffic, it would ill become this court to strike down any reasonable well-considered regulation as to parking within this city such as that contained in section 15 of the Traffic Regulations of the City of New York unless confronted with most cogent compelling authority.
Although the defendant has urged the invalidity of this section of the Traffic Regulations of New York City with great force and ability, no such decisive controlling authority has been cited.
It is held that article 15 of the Traffic Regulations of the City of New York which is duly based upon and issued pursuant to the Charter of the City of New York, a subsequent enactment which is in the nature of special legislation, is not rendered invalid by the provisions of subdivision 20 of section 2 of the Vehicle and Traffic Law a prior as well as a general law.
While the question of law must be decided against the defendant, it might not be amiss to point out that there may be good reason for administrative differentiation in the regulation of the nonmotor vehicle from the motor vehicle which latter is the basic cause of New York City’s traffic problems. It might well be asked, if a city like Paris, with comparable traffic problems can by licenses permit pushcarts, portable stalls, and the like, in less crowded areas to move at less congested hours and enjoy thereby the colorful open air flower marts, book centers, bird marts, etc., which are a source of much delight and utility to residents and tourists alike, why cannot the City of New York? The ungaraged car parked at every available curb has become a veritable public nuisance, but should such nuisance and the efforts to regulate it be the cause for the elimination of all color and delight from our streets, avenues, squares and by-way areas?
The defendant is found guilty of the charge and a sentence of two days or $2 is imposed. The defendant is to have until September 9, 1957, within which to pay the fine or surrender.