Stephen J. Powers, Esq. Informal Opinion Assistant County Attorney No. 2001-1 County of Rockland Department of Law Office of the County Attorney Allison-Parris County Office Building 11 New Hempstead Road New City, New York 10956
Dear Mr. Powers:
You have inquired whether the County of Rockland is authorized to enact a local law prohibiting a driver from holding and using a mobile phone while operating a motor vehicle on roads within the County.
Your request presents a complex question on which there is no clear judicial authority. However, while there is an argument to be made that the proposed local law is valid, our reading of the relevant precedents, in conjunction with the Vehicle and Traffic Law as a whole, supports the contrary conclusion that the County is preempted by State law from enacting such a local law.
A. Analytical Framework
Resolution of the issue you present requires the consideration of two main questions. The threshold question is whether the proposed local law falls within the general police powers of localities provided for in the "home rule powers" section of the New York State Constitution, article IX, § 2, and section 10 of the Municipal Home Rule Law. If the proposed legislation falls within these general powers — and we conclude that it does — we must determine whether the proposed legislation conforms to the principal limitation on the legislative power of local governments — that their laws be "not inconsistent with the provisions of this constitution or any general law. . . ." See New York State Constitution, article IX, § 2(c). The relevant general law here is the Vehicle and Traffic Law ("VTL").
This latter question — whether the proposed law regarding the use of hand-held mobile phones in a motor vehicle is inconsistent with the VTL — divides, in turn, into two questions: (1) Has the authority to legislate on this subject been specifically delegated to the County pursuant to the VTL?; and (2) If not, is the County preempted by the VTL from passing such a law? Examination of the relevant statutes and legal precedents leads us to conclude that authority to enact the proposed local law has not been delegated to the County and that such legislation appears to be preempted by the VTL.
B. Legislation Regarding Hand-Held Mobile Phone Use in MotorVehicles Falls Within the General Scope of Home Rule Powers
The general delegation of power to localities to regulate streets and roads within their boundaries is contained in Article IX, § 2(c)(6) of the New York Constitution and Municipal Home Rule Law § 10. Specifically, the New York Constitution grants local governments the power to adopt local laws relating to "the acquisition, care, management and use of its highways, roads, streets, avenues and property," provided that such laws are not inconsistent with the provisions of the Constitution or any general law. Likewise, the Municipal Home Rule Law grants municipalities the power to adopt local laws relating to their own "property, affairs or government" and gives them the power to enact laws relating to the "government, protection, order, conduct, safety, health and well-being of persons or property therein," provided such laws are not inconsistent with any general law or with the Constitution. Mun. H.R. Law §§ 10(1)(i), (ii)(a)(12).
Regulation of hand-held mobile phone use in motor vehicles clearly falls within the broad scope of home rule powers described above. The more difficult question, which we turn to now, is whether the County's exercise of its police powers to enact such a local law is inconsistent with State law.
C. The Legislation Appears To Be Inconsistent with StateLaw
Determination of whether the proposed local law is inconsistent with State law requires examination of (1) whether the VTL specifically delegates the authority to the locality to regulate mobile phone use in motor vehicles; and (2) if not, whether the proposed local law is preempted by State law. Preemption can be either express or implied. Express preemption occurs when State law expressly prohibits localities from legislating in a particular area. Implied preemption occurs where, notwithstanding the absence of an express preemption, State law indicates a purpose to occupy an entire field of regulation. See Ames v. Smoot,98 A.D.2d 216, 217-219 (2d Dept. 1983), appeal dismissed, 62 N.Y.2d 804
(1984).
1. Delegation
The VTL has not specifically delegated to the County the authority to restrict hand-held mobile phone use in motor vehicles traveling on roads within the County.
The VTL contains numerous specific delegations of legislative power to counties to regulate traffic in sections 1650-1652-b. For example, section 1650 authorizes counties to allocate the center lane of a highway for traffic moving in a specified direction; to order signs directing slow-moving traffic, buses, and other vehicles; and to exclude vehicles of certain weights from county roads. See VTL §§ 1650(a)(1),(2),(4). None of the specific delegations to the counties in the VTL embraces the subject matter of the County's proposed law.
2. Preemption
Because the power to legislate in this area has not been specifically delegated to the County, the proposed law would be valid only if it is not preempted by State law. Notably, circumstances in which a local law that does not fall within a specific delegation in the VTL has nevertheless been determined not to be preempted are extremely rare.See, e.g., 1914 Op. Atty Gen. (Inf.) 149 (although Motor Vehicle Law does not delegate power to legislate regarding excessive smoke or "muffler cutouts," local law forbidding same not preempted because it is aimed at "nuisances [that] arise incidentally in connection with automobiles.")
a. Express Preemption
VTL § 1604 expressly prohibits local authorities from legislating in four areas related to motor vehicles and their use of the highways:
Except as otherwise provided in this chapter, local authorities shall have no power to pass, enforce or maintain any ordinance, rule or regulation [1] requiring from any owner of a motor vehicle . . . any tax, fee, license or permit for the use of the public highways, or [2] excluding any such owner . . . from the free use of such public highways . . . or [3] in any other way restricting motor vehicles . . . or their speed upon or use of the public highways; or [4] setting aside for any given time a specified public highway or any part thereof constructed in whole or in part at the expense of the state for exhibitions, shows, exercises, entertainments or meetings. . . .
VTL § 1604 (numbers in brackets added). This broadly preemptive provision is in harmony with VTL § 1600, which provides that "[t]he provisions of this chapter shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein," and prohibits local authorities from enacting laws that conflict with the VTL "unless expressly authorized herein."
If the proposed law fits into any of the four categories set forth in section 1604, it is, in the absence of a specific delegation from the State, expressly preempted. Because the proposed law clearly involves neither a permit or fee requirement (category [1]) nor the setting aside of roads for public purposes (category [4]), only the second and third categories denoted above warrant close consideration.
The second class of legislation — that which excludes motor vehicle owners or operators from "free use" of the highways — has been addressed, in judicial decisions and opinions of the Attorney General, more frequently than the third class of expressly preempted laws. Local laws that have been deemed preempted because they constitute exclusions from free use under VTL § 1604 or its predecessor, VTL § 54, include a village ordinance prohibiting parking in a residential area without a "resident parking permit," State of New York v. Speakerkits,Inc., 83 N.Y.2d 814 (1994); an ordinance precluding nonresidents from traveling through the Village of New Hyde Park, People v. Grant,306 N.Y. 258 (1953); a New York City law banning persons in single-occupant private passenger cars from using four East River bridges to drive into Manhattan on weekday mornings, Automobile Club of NewYork, Inc. v. City of New York, 1981 N.Y. Misc. Lexis 3518 (Sup.Ct. N.Y. Co. 1981); a law prohibiting the use or possession on New York City streets of vehicles "having the appearance [e.g., color] of" vehicles used by the fire department or fire patrol, Great Atlantic PacificTea Co. v. City of New York, 17 N.Y.S.2d 270 (Sup.Ct. N.Y. Co., Special Term 1940); and implementation of a "parking coupon system" by the City of Albany, 1979 Op. Atty Gen. (Inf.) N.Y. 117 (relying on both the prohibition against local laws requiring tax, fee, license or permit and the prohibition against excluding from free use).
To date, no judicial decision or Attorney General's Opinion has applied the "excluding from free use" clause of section 1604 to a law forbidding the use of cell phones, or to any analogous specific conduct that an individual might engage in while inside a motor vehicle. Moreover, the language of the clause and the decisions interpreting it suggest that it addresses the issue of the basic access of a vehicle or operator/owner to the highways rather than the operator/owner's conduct in a vehicle. While there is a counter-argument to be made that the distinction between access and conduct cannot be maintained (consider, for example, whether the prohibition on single-occupant vehicles in Automobile Club of NewYork, supra, addresses access or conduct), it appears, on the whole, inappropriate to classify the proposed law as one that "exclud[es]" individuals "from the free use of such public highways" under section 1604.
Turning to the remaining category, it seems that the proposed law could be properly classified as falling within category [3] — as a provision that "in any other way restrict[s] motor vehicles['] . . . use of the public highways." Although this third preemptive category has received almost no comment in prior opinions of the Attorney General or judicial decisions, both its language and context support a broad reading.
To begin, the phrase "in any other way" implies that the clause has a wide scope. The key issue then becomes determining the scope of the next phrase in section 1604, "restricting motor vehicles['] use of the public highways." Section 300, which sets forth the proper application of Title III of the VTL, provides useful guidance. It states:
Except as otherwise expressly provided in this chapter, this title shall be exclusively controlling:
(a) On the use by motor vehicles of public highways, and
(b) On the accessories used upon motor vehicles and motorcycles and their incidents.
Title III includes Article 9, entitled "Equipment of motor vehicles and motorcycles." Significantly, that article includes prohibitions against operating a motor vehicle while wearing more than one earphone attached to an audio device, VTL § 375(24-a), and operating a motor vehicle equipped with a television set within the driver's view, VTL § 375(24). These proscriptions are very similar to the proposed local law regarding hand-held mobile phones. Because the Legislature has determined that such prohibitions regulate "use by motor vehicles of public highways," the logical conclusion is that the proposed local law similarly regulates "motor vehicles['] use of the public highways" as well. Accordingly, section 1604 should be interpreted as preempting the proposed local law.[1]
The conclusion that the proposed local law is expressly preempted is supported by the evident intent of the VTL as a whole to establish broad preemption interrupted only by specific delegations of power to localities to regulate matters pertaining to motor vehicles and the State's highways. As stated in a previous opinion, "[t]he comprehensive preemption of regulation of the streets and highways provides little flexibility." 1999 Op. Atty Gen. (Inf.) N.Y. 15.[2]
It may be argued to the contrary that the statute's prohibition against restrictions on motor vehicles' use of the highways refers only to the appearance of or appurtenances to motor vehicles. Such a contention is undercut not only by the considerations discussed above but also by the inclusion of a prohibition of restrictions on motor vehicles' "speed upon" the public highways in section 1604's third preemptive category. The inclusion of vehicle speed — which, like the proposed statute, relates to the manner in which one drives a vehicle — further undermines the claim that only limitations on the physical attributes of vehicles are forbidden.
On balance, we conclude there is a strong argument that the proposed law would be expressly preempted by the VTL.
b. Implied Preemption
Even assuming that the proposed local law is not expressly preempted by section 1604, it may well be found impliedly preempted by the VTL as a whole. A local law is impliedly preempted when, notwithstanding the absence of an express preemption, the statutory scheme evidences an intent to "occupy the entire field so as to prohibit additional regulation by local authorities." See People v. DeJesus, 54 N.Y.2d 465,469 (1981) (quoting Robin v. Incorporated Vill. Of Hempstead,30 N.Y.2d 347, 350 (1972)). In assessing whether such an intent is manifested, courts look to the purpose and scope of the State legislative scheme, including whether it evinces a desire for statewide uniformity in a given area. Robin, 30 N.Y.2d at 350.
The VTL is an "elaborate and detailed regulatory scheme," Vatore v.Comm'r of Consumer Affairs of the City of New York, 83N.Y.2d 645, 649 (1994), controlling the use of motor vehicles on public highways. The scope of the VTL is comprehensive, covering a wide range of subjects, including traffic regulations, driver safety, equipment, and other rules of the road. The VTL's underlying purpose to establish statewide uniformity in this area is manifest in its language, see VTL § 1600 ("The provisions of this chapter shall be applicable and uniform throughout this state. . . ."), pervades its legislative history, and has been repeatedly noted by the courts, see, e.g., People v. Scanlan,27 Misc.2d 442, 443 (Rockland Co. Ct. 1961) ("It is apparent that the Legislature intended to enact a uniform law throughout the State regulating the use of motor vehicles. . . ."); City of Buffalo v. Lewis,192 N.Y. 193, 199 (1908); People v. City of Hornell, 256 A.D. 113, 115
(4th Dep't) aff'd, 282 N.Y. 555 (1939); People v. President and Trusteesof Ossining, 238 A.D. 684 (1st Dep't 1933), aff'd, 264 N.Y. 574 (1934).
In Great Atlantic Pacific Tea Co., supra, the court observed that failure to recognize the State's exclusive control over the color of motor vehicles would "create a condition of confusion and chaos," and "would violate the policy and purpose of uniformity upon which the Vehicle and Traffic Law is based." 17 N.Y.S.2d at 272. "It might become necessary for an owner of a vehicle in traveling from city to city, within the State, to change the color of the vehicle as he entered each city having a different local law regarding such color." Id. at 272-73. To hold that State law does not preempt the proposed local law would create a similar problem with regard to hand-held mobile phone use in motor vehicles. Indeed, such a holding would authorize patchwork legislation, varying from locality to locality, with regard to almost any safety-related driver conduct, from tuning a car radio to eating a sandwich to consulting a map.
Even if the subject targeted by the proposed legislation is drawn more narrowly to embrace only such safety-related behavior of drivers (rather than all conduct related to motor vehicles and the State's highways), the intent of the VTL to occupy this field is apparent in a number of analogous provisions aimed at promoting safety by regulating the conduct of drivers. In a provision most closely related to the instant law, this subject matter has been addressed in VTL § 375(24-a), which restricts the use of earphones while driving a car:
It shall be unlawful to operate upon any public highway in this
state a motor vehicle, limited use automobile, limited use
motorcycle or bicycle while the operator is wearing more than
one
earphone attached to a radio, tape player or other audio device.
The legislative history of this provision, adopted in 1983, indicates that it was aimed at preventing people from wearing "walkmen" while driving. It was enacted to ensure the safety of drivers and pedestrians and to reduce the risks caused by distraction to the driver. According to the Sponsor's Statement: "Vehicle safety requires complete concentration by the driver as to the sights and sounds around him . . . The wearing of earphones attached to an audio device will only limit the concentration ability and tend to defeat the traffic safety purpose."
Other provisions in the VTL address similar concerns about driver distraction and control of the vehicle. Section 375(24) makes it unlawful to operate a motor vehicle on a public highway equipped with a television receiving set within view of the operator. VTL § 1226 requires that "no person shall operate a motor vehicle without having at least one hand . . . on the steering mechanism at all times when the motor vehicle is in motion." Section 1212 contains a general proscription against reckless driving. All of these provisions, aimed at driver concentration and safety, address safety issues similar to those raised in the proposed mobile phone law, and, together with the broad preemptive language of VTL § 1600, indicate the State's intent to be the sole legislator in the area unless it specifically delegates such power to local authorities.
In short, because the VTL evidences an intent to occupy the field of driving safety regulation, it is likely that the proposed law is impliedly preempted.
Based on the above analysis, we conclude that there is a substantial possibility that the County of Rockland lacks the authority to pass a local law prohibiting a driver from holding and using a hand-held mobile phone while operating a motor vehicle on County roads.
The Attorney General renders formal opinions only to officers and departments of State Government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
MARK GIMPEL, Deputy Solicitor General
ALLISON PENN
Assistant Solicitor General
[1] Even if rules that prohibit the use of certain audio-visual devices in motor vehicles were understood to relate only to "accessories" under § 300(b), and not to "use" of the highways under § 300(a), the proposed local law would still be preempted by § 300's directive that Title III is "exclusively controlling" with regard to motor vehicle accessories.
[2] This stands in contrast to those cases in which a challenged local law has been held to lie outside the scope of a narrowly-drawn express preemption. See, e.g., City of New York v. Job-Lot Pushcart et al.,88 N.Y.2d 163 (New York City law prohibiting possession of any toy or imitation gun that resembles actual firearm not preempted by Federal Toy Gun Law which expressly prohibits only State or local regulation of "replicas of antique firearms, B-B guns, paint ball guns, or pellet-firing air guns"), cert. denied, 519 U.S. 871 (1996); Matter ofHoltzman v. Oliensis, 91 N.Y.2d 488 (1998) (Federal Election Campaign Act's subject-specific preemption of State law "with respect to election to Federal Office" did not preempt application of conflict of interest provisions of New York City Charter to City Comptroller's actions regarding a loan in connection with her campaign for U.S. Senate).