John BRYANT and Lillie Bryant, Plaintiffs-Petitioners,

v.

COMMISSIONER OF SOCIAL SERVICES OF the CITY OF NEW YORK, Spence-Chapin Services to Families and Children, and Commissioner of Social Services of the State of New York, Defendants-Respondents.

No. 81 Civ. 3173 (RJW).

United States District Court, S. D. New York.

Jan. 20, 1982.

---

**48.** *Loughney v. Hickey*, 635 F.2d 1063, 1070–71 (3d Cir. 1980) (concurring opinion).

Queens Legal Services Corp., Long Island City, N. Y., for plaintiffs-petitioners; Stanley A. Bass, Patricia M. Callahan, Mark H. Spires, Long Island City, N. Y., of counsel.

Allen G. Schwartz, Corp. Counsel, New York City, for defendant-respondent Commissioner of Social Services of the City of New York; Eugene Nathanson, Denise L. Thomas, Asst. Corp. Counsel, New York City, of counsel.

Robert Abrams, Atty. Gen. of N. Y., New York City, for defendant-respondent Commissioner of Social Services of the State of New York; Andrea G. Iason, Asst. Atty. Gen., New York City, of counsel.

Simpson Thacher & Bartlett, New York City, for defendant-respondent Spence-Chapin Services to Families and Children; John N. O'Shea, New York City, of counsel.

ROBERT J. WARD, District Judge.

Plaintiffs-petitioners in this action are John and Lillie Bryant ("the Bryants"), the former foster parents of three children, Kim Walker ("Kim"), David Pitman ("David"), and Virginia Parris ("Virginia"), who were removed from the Bryants' foster care on October 1, 1980. The action was commenced when the Bryants filed a document ("the complaint/petition") in this Court that purports at once to be a complaint seeking injunctive relief pursuant to 42 U.S.C. § 1983 and a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The basic legal contention put forth by the Bryants is that they were deprived of their fourteenth amendment right to due process by the failure of defendants-respondents to hold a hearing prior to removing Kim, David, and Virginia from the Bryants' foster care. Defendants-respondents are the Commissioner of Social Services of the State of New York ("the State Commissioner"), the Commissioner of Social Services of the City of New York ("the City Commis-

sioner"), and Spence-Chapin Services to Families and Children ("Spence-Chapin").

The Bryants now move, by order to show cause, for an order granting the relief sought by the complaint/petition. The Court has determined to treat this application as a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. The City Commissioner and Spence-Chapin separately cross-move, pursuant to Rule 12(b)(6), Fed.R.Civ.P., for an order dismissing the complaint/petition. Counsel for the State Commissioner has filed an affidavit with the Court stating that the State Commissioner joins in these motions. For the reasons hereinafter stated, the Bryants' motion is denied, the City Commissioner's motion is granted in part and denied in part, and Spence-Chapin's motion is granted in part and denied in part.

BACKGROUND

The factual background to this litigation is most easily described by beginning with an explanation of the legal relationship between the various parties before the Court. The State Commissioner is the chief executive and administrative officer of the New York State Department of Social Services. N.Y.Soc.Serv.Law § 11. This department is required to administer all aspects of the public welfare activities for which the State of New York is responsible under the New York Social Services Law. Id. § 20.2(a). The City Commissioner heads the New York City Department of Social Services, which is a "local social services department" within the meaning of the New York Social Services Law. See id. §§ 2.17, 62.1. Local social services departments such as the New York City Department of Social Services are also responsible for administering, under the supervision of the New York State Department of Social Services, the public assistance programs set forth in the New York Social Services Law. Id. § 20.2(b).

The portions of the New York Social Services Law that govern the provision of "foster care" are somewhat complicated. Under New York law, a child is placed in foster care by transferring legal custody of

the child to an "authorized child welfare agency." Such a transfer may be effected either by a written instrument executed by the child's natural parent or guardian, *id.* § 384–a.1, or by a court order, *see* N.Y. Family Court Act §§ 753, 754, 756, 1052 & 1055. The "authorized child welfare agencies" to which custody of children may be transferred under these sections include not only local public welfare bureaus, such as the New York City Bureau of Child Welfare, but also any private child-care agency that has been licensed to provide foster care by the State of New York and has entered into a contract with a local social services department pursuant to which it agrees to provide foster care to eligible children. *See* N.Y.Soc.Serv.Law § 371.10. Spence-Chapin, the third defendant-respondent, is a private child-care agency located in New York City that has been licensed to provide foster care by the State of New York and that is presently engaged in providing foster care to a number of children pursuant to a contract with the New York City Department of Social Services.

When legal custody of a child is transferred to an agency such as Spence-Chapin in the manner described above, the child is either maintained directly by the agency itself in an institutional setting, *id.* §§ 374–b, 374–c & 374–d, or "placed out" in a private home with "foster parents" such as the Bryants. *Id.* § 374.1. In the latter case, the foster parents care for the child under a contractual arrangement with the placing agency; while the foster parents are charged with day-to-day supervision of the child, legal custody of the child remains with the agency.

Occasionally, the authorized child welfare agency that has legal custody of a child will determine that the child should be removed from the care of his or her foster parents. In such event, the foster parents have a statutory right to a hearing before the removal occurs, at which they can contest the propriety of the agency's decision to remove the child from their care. There are two procedural mechanisms available to obtain such a hearing: (1) the foster parents may file a petition in the New York Family Court for review of the child's foster care status pursuant to N.Y.Soc.Serv.Law § 392; or (2) the foster parents may appeal the agency's decision to the New York State Department of Social Services pursuant to N.Y.Soc.Serv.Law § 400.

The events leading to the commencement of this litigation date back to 1972, when the City Commissioner and Spence-Chapin placed Kim, David, and Virginia with the Bryants for foster care. A previous placement with the Bryants had resulted in the Bryants' adoption of two children. The decision to place Kim, David, and Virginia with the Bryants was apparently based, at least in part, on the success of this prior placement.

Kim, David, and Virginia lived with the Bryants continuously from 1972 until October 1, 1980. In 1976, the Bryants sought permission to adopt these three children. By March 1978 all three children had been legally freed for adoption. The Bryants, having had continuous care of Kim, David, and Virginia as foster parents for more than two years, were entitled to preference over all other applicants seeking to adopt the children. *Id.* § 383.3. However, on June 11, 1979, the City Commissioner and Spence-Chapin denied the Bryants' application to adopt Kim, David, and Virginia. The City Commissioner and Spence-Chapin further determined that Kim, David, and Virginia should be removed from the Bryants' foster care, in order that the children could be placed with foster parents who might be permitted to adopt them. Kim, David, and Virginia were removed from the Bryants' foster care on October 1, 1980, and were subsequently placed in pre-adoptive foster care with a family in Oregon. No hearing was held prior to the removal. The Bryants allege that they failed to avail themselves of their statutory right to a preremoval hearing because defendants-respondents deliberately failed to inform them of that right.

The Bryants commenced their challenge to the removal decision on January 23, 1981, by filing a petition in the New York Family

Court pursuant to N.Y.Soc.Serv.Law § 392 ("Section 392"). This petition sought Family Court review, as provided for in Section 392, of the foster care status of Kim and David. Subsequently, the Bryants filed a Section 392 petition seeking review of Virginia's foster care status. The two petitions were ultimately consolidated by an order of the Family Court judge.

In an order dated March 17, 1981, the Family Court determined that it had jurisdiction to hear the Bryants' consolidated petitions. It also found that "[t]here exists a genuine and substantial issue of fact as to whether or not the former foster parents, Mr. & Mrs. Bryant, were informed [by the City Commissioner and Spence-Chapin] of their rights regarding the removal of the children from their home." On this basis, the Family Court directed the New York State Department of Social Services to hold a hearing, pursuant to N.Y.Soc.Serv.Law § 400 ("Section 400"), to determine the propriety of the City Commissioner's decision to remove Kim, David, and Virginia from the Bryants' home.

The Section 400 hearing was commenced on April 3, 1981; testimony was taken on four days during April and May 1981. At the hearing, the Bryants took the position that there was no jurisdiction for the hearing to be conducted. The right of a foster parent to challenge a decision to remove a child from his or her foster care by commencing a Section 400 proceeding is subject to N.Y.Soc.Serv.Law § 22, *id.* § 400.2, which requires that the hearing "must be requested within sixty days after the date of the action or failure to act complained of." *Id.* § 22.4. The Bryants argued that, since their Section 392 petitions had not formally requested a Section 400 hearing, and since they had not made anything that could even arguably be construed as a request for a Section 400 hearing during the sixty-day period provided for in N.Y.Soc. Serv.Law § 22.4, there was no jurisdictional basis for a Section 400 hearing notwithstanding the Family Court's order that such a hearing be commenced. In essence, the Bryants took the position that the propriety of the decision to remove Kim, David, and

Virginia from the Bryants' foster care could only be determined at a hearing conducted by the Family Court itself in the context of adjudicating the consolidated Section 392 petitions. By a decision dated July 31, 1981, the New York State Department of Social Services accepted the Bryants' jurisdictional argument and accordingly declined to resolve the question that had been the subject of the hearing: whether the Bryants were, upon being notified of the decision that Kim, David, and Virginia would be removed from their care, properly informed of their right to a preremoval hearing.

In the meantime, the Bryants had continued to litigate their Section 392 petitions before the Family Court. In an order dated March 30, 1981, the Family Court judge denied the Bryants' request that Kim, David, and Virginia be returned to the Bryants' home pending determination of the Section 392 petitions. In making this request, the Bryants had relied both on Section 392 itself and the United States Constitution. On April 7, 1981, the Family Court judge signed an order dealing with a number of other requests made by the Bryants. By a notice of appeal filed April 8, 1981, the Bryants sought to appeal the Family Court's orders of March 17, March 30, and April 7. Later, on April 17, 1981, the Bryants moved before the Appellate Division for an order expediting the hearing of this appeal. The Appellate Division, in an order dated May 7, 1981, treated the Bryants' motion as a motion for leave to file an interlocutory appeal pursuant to N.Y.Civ.Prac.Law § 5701(c), denied the motion, and dismissed the appeal for want of jurisdiction.

The Bryants thereupon determined that the time had come to make a federal case out of the matter, and accordingly commenced the instant action by filing the complaint/petition with the Clerk of this Court on May 26, 1981. The already-described order to show cause and cross-motions to dismiss that are the subject of today's decision soon followed. The Court heard argument on these motions on June 3, 1981, and

reserved decision in order to allow the parties time to serve and file additional submissions relating to certain issues raised during the argument. These submissions were filed by July 1, 1981. In a subsequent submission filed with the Court on August 20, 1981, Spence-Chapin notified the Court of the determination by the New York State Department of Social Services that it was without jurisdiction to hold a Section 400 hearing notwithstanding the Family Court's order that it conduct such a hearing. This submission also informed the Court that the Section 392 petitions were still pending before the Family Court. The final submission received by the Court was filed on December 10, 1981. This submission informed the Court of the Family Court's most recent decision in the Section 392 proceeding. By this decision, the Family Court denied Spence-Chapin's motion to dismiss the Bryants' Section 392 petitions, directed that the case be set down for a hearing to determine whether the current placement of Kim, David, and Virginia for foster care in Oregon is in the best interests of the children, and ordered that the proposed adoption of Kim, David, and Virginia by their Oregon foster parents be stayed until a decision is rendered on the Section 392 petitions. As far as this Court is aware, no further developments of substance have occurred in the Section 392 proceeding since the decision just described.

## DISCUSSION

The Court begins its discussion of the pending motions by endeavoring to articulate the legal theory on which the Bryants' action is based. The Bryants postulate that, when a child is placed with foster parents for a year or more, the resultant "family unit" has an interest in its survival that is within the "liberty" that the fourteenth amendment protects from deprivation without due process of law. This postulate forms the predicate for a second general proposition: the removal of a foster child from the care of foster parents with whom the child has resided for a year or more is unconstitutional unless the requirements of due process have been satisfied.

The "process" that is, in the Bryants' view, "due" under this rule includes an opportunity for a preremoval hearing to determine the propriety of the removal. Here, the Bryants allege, that opportunity was denied by virtue of the deliberate failure of the employees of the New York City Department of Social Services and Spence-Chapin to inform the Bryants that they had a statutory right to such a preremoval hearing. The Bryants accordingly reason that they have been "subjected . . . to the deprivation of . . . rights . . . secured by the Constitution," within the meaning of 42 U.S.C. § 1983, and that Kim, David, and Virginia are presently "in custody in violation of the Constitution," within the meaning of 28 U.S.C. § 2241.

In the Bryants' view, they are not being accorded the process that they are constitutionally due in the proceeding that has been commenced in the Family Court as a result of their Section 392 petitions. The Bryants concede, as they must in light of the United States Supreme Court's specific holding to this effect in *Smith v. Organization of Foster Families for Equality & Reform*, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), that a *preremoval* Section 392 hearing would have, in this case, constituted the requisite due process. Their position is that they cannot possibly be given their "due process" by the ongoing Section 392 proceeding, because that proceeding is affording them merely a *postremoval* opportunity to be heard. In the Bryants' view, where, as they allege to have been the case here, a state determines to remove a child from the care of his or her foster parents, and then intentionally acts to prevent the foster parents from utilizing their right to a preremoval hearing, the state cannot offer the foster parents a postremoval hearing and expect its conduct to pass constitutional muster. Under these circumstances, the Bryants contend, the fourteenth amendment can only be satisfied by first returning the child to the care of his or her foster parents, and then proceeding to conduct a hearing on the propriety of removal. Accordingly, the complaint/petition filed

herein asks the Court (1) to hold that the removal of Kim, David, and Virginia from the Bryants' care was accomplished in violation of the fourteenth amendment, and (2) to remedy this constitutional violation by directing the City Commissioner and Spence-Chapin, who have legal custody of the three children, to return Kim, David, and Virginia to the Bryants' care. The Bryants concede that, subsequent to such a return, it would be open to the City Commissioner and Spence-Chapin to reinstate proceedings to remove the three children from the Bryants' home.

■ Having set forth its reading of the factual allegations and legal premises of the complaint/petition, the Court turns to the pending motions. The Bryants' application, which has been brought on by order to show cause and which the Court has determined to treat as a motion, pursuant to Rule 56, Fed.R.Civ.P., for summary judgment, is easily disposed of. Accepting for present purposes the soundness of the Bryants' legal theory, it is clear that the Court will be unable to afford them relief either pursuant to 42 U.S.C. § 1983 or pursuant to 28 U.S.C. § 2241 unless the Court determines that employees of the City Commissioner or Spence-Chapin failed to inform the Bryants of their statutory right to a preremoval hearing. This factual issue is disputed by the parties and cannot be resolved by the Court on the basis of the papers before it; a hearing will plainly have to be held. It is thus impossible at this juncture for the Court to grant summary judgment in favor of the Bryants. Accordingly, the Court denies the Bryants' motion for an order granting them the relief sought in the complaint/petition.[1]

The City Commissioner and Spence-Chapin have, as noted, each cross-moved pursuant to Rule 12(b)(6), Fed.R.Civ.P., to dismiss the complaint/petition. Counsel for the State Commissioner has filed an affidavit stating that the State Commissioner joins in these motions. The Court has determined to deal with these motions by considering first whether the complaint/petition should be dismissed insofar as it relies on 42 U.S.C. § 1983, and then determining whether the complaint/petition passes legal muster as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

### Availability of Relief Under 42 U.S.C. § 1983

■ Defendants-respondents, to whom the Court shall refer simply as "defendants" in discussing the legal sufficiency of the complaint/petition under 42 U.S.C. § 1983 ("Section 1983"), proffer two theories in support of their argument that the complaint/petition must be dismissed insofar as it relies on Section 1983. First, defendants contend that, given the pendency of the Bryants' state court action, principles of abstention require dismissal of the Bryants' federal action insofar as Section 1983 is the asserted basis for relief. Second, defendants contend that the complaint/petition fails to state a claim upon which relief can be granted under Section 1983. The Court agrees, albeit for somewhat different reasons than those proffered by defendants, that abstention is appropriate here. However, as the Court explains *infra*, this conclusion does not provide a basis for a Rule 12(b)(6) dismissal. Accordingly, the Court denies defendants' motions insofar as they seek dismissal of the Bryants' Section 1983 claims on abstention grounds, grants defendants' motions insofar as they seek, by their request of "such other and further relief as to this Court may seem just and proper," to have the Bryants' Section 1983 claims stayed pending the outcome of the Section 392 proceeding in the New York state courts, and denies defendants' motions without prejudice insofar as they seek dismissal of the Bryants' Section

---

1. The Court observes that, if it were able to construe the Bryants' application as a motion for preliminary injunctive relief pursuant to Rule 65(a), Fed.R.Civ.P., it would still deny the Bryants' motion. First, as the Court discusses in text *infra*, the Bryants have failed to show the irreparable harm that is a necessary predicate to the grant of such relief. Second, the Court's determination by today's decision that proceedings in this action should be stayed would also preclude the Court from awarding preliminary injunctive relief.

1983 claims for failure to state a claim upon which relief can be granted.

■ Defendants have, in their papers, relied on *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, to support their contention that abstention, and hence dismissal of the complaint/petition insofar as it relies on Section 1983, is appropriate in this case. Generally, the core of the rule laid down in *Younger v. Harris* is that a federal court cannot, in the absence of unusual circumstances, enjoin a pending state criminal prosecution. 17 C. Wright & A. Miller, *Federal Practice and Procedure* § 4252, at 544 (1978). This doctrine has been extended, on a case-by-case basis, to several types of state civil litigation, *see, e.g., Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) including certain child-custody cases, *see, e.g., Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979).

Defendants' argument that the Court should invoke *Younger v. Harris* here is based on the fact that part of the relief sought by the complaint/petition is an order preliminarily enjoining the Section 400 proceeding that was pending when the Bryants filed the complaint/petition. There is recent authority to support the proposition that *Younger v. Harris* abstention may be warranted in certain cases where, as here, the pending state proceedings are administrative rather than judicial. *Williams v. Red Bank Board of Education*, 662 F.2d 1008 (3d Cir. 1981). However, as the Court previously noted, the Section 400 proceeding that the complaint/petition asks the Court to enjoin was dismissed as jurisdictionally defective by a decision of the New York State Department of Social Services dated July 31, 1981. Since the Section 400 proceeding has been discontinued, the Court is not in a position to enjoin that proceeding, and hence could not, were it to find in plaintiffs' favor on the merits, order any relief that would interfere with a state proceeding in the manner feared by the

*Younger v. Harris* Court. The *sine qua non* of abstention under *Younger v. Harris* is the possibility that a finding for the plaintiff on the merits would involve *enjoining* a state proceeding. *Fair Assessment in Real Estate Association, Inc. v. McNary*, —— U.S. ——, 102 S.Ct. 177, 184, 70 L.Ed.2d 271 (1981); *see Gerstein v. Pugh*, 420 U.S. 103, 108 n.9, 95 S.Ct. 854, 860 n.9, 43 L.Ed.2d 54 (1975) (holding that district court properly refused to abstain under *Younger v. Harris* where injunctive relief sought by plaintiff was not addressed to a state proceeding). Such an injunction is no longer possible in this case. Under these circumstances, the Court finds the *Younger v. Harris* doctrine inapplicable and accordingly rejects defendants' abstention argument insofar as it relies on that doctrine.

■ This holding does not conclude the Court's abstention analysis, however. The facts of this case arguably implicate not only the abstention doctrine enunciated in *Younger v. Harris*, but also a second type of abstention, first described by the Supreme Court in *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).[2] *Pullman* stands for the general proposition that a federal court ordinarily should refrain from deciding a case in which state action is challenged on federal constitutional grounds if the case can, given a particular resolution of an "unclear" question of state law, be decided on a state-law ground. 17 C. Wright & A. Miller, *Federal Practice and Procedure* § 4242, at 449 (1978). The *Pullman* abstention doctrine rests on the policy that unnecessary decisions of federal constitutional issues should be avoided, because of the waste of judicial resources and the needless collisions of federal and state power inevitably caused by such decisions. H. Friendly, *Federal Jurisdiction: A General View* 93 (1973). Thus, federal courts should normally defer to the state courts in cases where state law is (1) "unclear" but (2) "reasonably susceptible" of an interpretation that would make adju-

---

**2.** The fact that none of the defendants has relied on *Pullman* is no barrier to the Court's concluding that *Pullman*-type abstention is ap-

propriate here. *Bellotti v. Baird*, 428 U.S. 132, 143 n.10, 96 S.Ct. 2857, 2864 n.10, 49 L.Ed.2d 844 (1976).

dication of the plaintiff's federal constitutional claim unnecessary. *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 307, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895 (1979).

An analysis of whether *Pullman* abstention is appropriate in a given case must begin, therefore, with a consideration of the federal constitutional claim that has been asserted. In order for the Court to find in the Bryants' favor on their federal constitutional claim, it would have to hold (1) that the removal of Kim, David, and Virginia from the Bryants' care deprived the Bryants of a constitutionally protected liberty interest and (2) that the Section 392 proceeding currently being afforded the Bryants does not satisfy the requirements of due process. Under *Smith v. Organization of Foster Families for Equality & Reform, supra*, the requirements of due process would unquestionably be satisfied, and the Bryants' constitutional claim would thus fail, were the Section 392 proceeding to occur at a time when Kim, David, and Virginia were under the care of the Bryants. 431 U.S. at 847–56, 97 S.Ct. at 2111–2116. Thus, if the New York state courts were to hold, as the Bryants have urged them to, that Section 392 entitles the Bryants to have Kim, David, and Virginia returned to their care during the pendency of their Section 392 petitions, and if to this end defendants were ordered to return Kim, David, and Virginia to the Bryants' home until the conclusion of the Section 392 proceeding, this Court would not be required to determine whether the Bryants were entitled to such relief as a matter of federal constitutional law.

*Pullman* abstention is appropriate in this case, then, if (1) it is "unclear" whether Section 392 makes this sort of relief available to foster parents in the Bryants' position, and (2) Section 392 is "reasonably susceptible" of being interpreted in the manner that the Court has just hypothesized. The Court begins its analysis of these questions by observing that where, as here, a foster child has been removed from the care of his or her foster parents, and the foster parents have challenged the removal by exercising their right under N.Y.Soc.Serv.Law § 392.2(c) to file a Section 392 petition, it is clear that the Family Court has the statutory *power* to order that the child be returned to the parents' foster care during the pendency of the petition. N.Y.Soc.Serv.Law § 392.8 (Family Court "may make an order of protection in assistance ... of any other order made under [Section 392]"; such an order "may set forth reasonable conditions of behavior to be observed for a specified time by a person or agency who is before the court"). However, while it is clear under New York law that the Family Court has the *power* to make any Section 392 proceeding into a preremoval hearing such as the Bryants consider to be their constitutional right, Section 392 is entirely silent as to whether foster parents in the Bryants' position may, as a matter of statutory right, demand that the Family Court *exercise* that power. Moreover, except for the decision rendered by the Family Court in the context of the Bryants' currently pending Section 392 petitions,[3] the Court has found no New York state court decision that rules on this question.[4]

3. As noted, the Bryants have unsuccessfully argued in the ongoing Section 392 proceeding that they are entitled, under both Section 392 itself and the United States Constitution, to have Kim, David, and Virginia returned to their care during the pendency of their Section 392 petitions. The fact that the Bryants have thus far been unsuccessful in making this claim does not affect the Court's abstention analysis. First, the Family Court's order rejecting the Bryants' request that Kim, David, and Virginia be returned to their care pending the outcome of the Section 392 proceeding was, as the Appellate Division has held, merely interlocutory.

Second, even if the Family Court could be said to have finally ruled on the subject, this Court, by abstaining under *Pullman*, defers to the New York state courts, including the New York Court of Appeals, and not just to the Family Court. *See Bellotti v. Baird, supra* note 2, 428 U.S. at 146–52, 96 S.Ct. at 2865–2868.

4. The New York case most nearly on point is *In re W.*, 77 Misc.2d 374, 355 N.Y.S.2d 245 (Fam. Ct.N.Y.Co.1974). The *In re W.* court did not consider the precise question at issue here. However, the decision in that case states that, "in spite of the fact that foster parents are given the right to participate as parties [in

Thus, this is not a case where *Pullman* abstention is inappropriate because the state law is clear on its face, *see New Motor Vehicle Board v. Orrin W. Fox Co.*, 439 U.S. 96, 100 n.3, 99 S.Ct. 403, 407 n.3, 58 L.Ed.2d 361 (1978), or because the state law question has already been authoritatively decided by the state courts, *see, e.g., Kusper v. Pontikes*, 414 U.S. 51, 55, 94 S.Ct. 303, 306, 38 L.Ed.2d 260 (1973). The Court accordingly concludes that it is "unclear" whether New York law affords foster parents a statutory right to insist that a foster child be returned to their care during the pendency of the foster parents' Section 392 petition challenging the propriety of removing the child from their care. Further, since the Bryants themselves have argued in the ongoing Section 392 proceeding that Section 392 affords them such relief, and since there is judicial authority indicating that Section 392 is properly interpreted in this fashion, *see* note 4 *supra*, the Court also concludes that Section 392 is "reasonably susceptible" of being interpreted by the New York state courts to require the Family Court to grant the Bryants' request that Kim, David, and Virginia be returned to their foster care during the pendency of their Section 392 petitions.

As the Court reads *Pullman* and its progeny, these conclusions require the Court to hold that the instant case is one involving the "special circumstances" that require abstention, *see Kusper v. Pontikes, supra*, 414 U.S. at 54, 94 S.Ct. at 306, unless there are powerful countervailing considerations that impel the Court to proceed with the case immediately. *See* Field, *Abstention in Constitutional Cases: The Scope of the* Pullman *Abstention Doctrine*, 122 U.Pa.L.Rev. 1071, 1129–34 (1974). The Court finds no such countervailing considerations here. First, since the action is already before the state courts, and since the Family Court is dealing with the matter in a most expeditious fashion, abstention in this case would not involve the delay that has occasionally in-

Section 392 proceedings], no authorized disposition in [such] proceedings can effectuate any rights in their favor," meaning that "the only statutory scheme which enables a foster parent to obtain positive redress from the Courts against an agency calls for proceedings outside [the Family Court]." 77 Misc.2d at 376, 355 N.Y.S.2d at 248–49. For a variety of reasons, this Court cannot regard the *In re W.* decision to control whether Section 392 requires that a foster child, if his or her foster parents so request, be returned to the care of his or her foster parents during the pendency of the parents' Section 392 petition challenging the removal of the child from their care. First, the language used in *In re W.* ignores the fact that N.Y.Soc.Serv.Law § 392.2(c) permits foster parents to *file* Section 392 petitions, not merely to *participate in* Section 392 proceedings. Second, later decisions of the Family Court have consistently allowed foster parents to use Section 392 as a vehicle to obtain relief with respect to children who are or have been under their foster care. *See, e.g., In re M.*, 101 Misc.2d 407, 421 N.Y.S.2d 300 (Fam.Ct.N.Y.Co. 1979). Third, the *In re W.* court, in apparent contradiction of its broad language quoted above, ordered that the child in question remain with her foster parents pending the parents' exhaustion of the administrative remedy provided by Section 400. 77 Misc.2d at 377, 355 N.Y.S.2d at 249.

A case more nearly on point is *Smith v. Organization of Foster Families for Equality & Reform, supra*. In that case, the United States Supreme Court declared that Section 392 "provides a mechanism whereby a foster parent may obtain preremoval judicial review of an agency's decision to remove a child who has been in foster care for 18 months or more." 431 U.S. at 832, 97 S.Ct. at 2103. In making this statement, the Supreme Court seems to have believed that, where foster parents file a Section 392 petition challenging the removal of a foster child from their care, Section 392 affords these foster parents an absolute right to have the child returned to their care pending determination of the petition. However, the Supreme Court did not expressly deal with this issue in deciding *Smith*. Even if the Supreme Court had expressly ruled on the question in that case, such a ruling would not, given that the United States Supreme Court does not issue "authoritative" decisions on New York law, and that the Family Court has taken a contrary position in the context of the Bryants' Section 392 petition, have altered the Court's conclusion that the answer to this question of New York law is presently "unclear." Nevertheless, as is discussed in text *infra*, the *Smith* Court's apparent reading of Section 392 is important to the Court's determination that Section 392 is "reasonably susceptible" of being interpreted to require the Family Court to order the return of Kim, David, and Virginia to the Bryants' care pending the Family Court's decision on the Bryants' Section 392 petitions.

fluenced courts to refuse to abstain. *See, e.g., Bellotti v. Baird, supra* note 2, 428 U.S. at 150, 96 S.Ct. at 2867. Indeed, where, as here, there is an action already pending in state court that will, when litigated through the state court system, likely resolve the state-law question underlying the federal claim, the willingness of the federal court to abstain under *Pullman* is increased.[5] Second, since the Family Court has stayed the proposed adoption of Kim, David, and Virginia during the pendency of the Section 392 proceeding, this is not a

case where abstention would threaten to cause the plaintiff to suffer significant irreparable harm. Third, the Court finds that the Bryants' federal constitutional argument is, at a minimum, colorable, obviating any argument that abstention is inappropriate here because the proffered federal constitutional claim is meritless on its face.[6]

■ Thus, the Court agrees with defendants' argument that abstention is appropriate in this action. However, since *Pullman-*

---

[5] Were this not a case where *Pullman*-type abstention is appropriate, the pendency of the Bryants' Section 392 proceeding before the Family Court would provide the basis for the Court to stay this action on yet another abstention theory. It is well settled that a federal court may, in the exercise of its discretion, stay proceedings in an action pending before it where there is a pending state proceeding that raises identical issues to those raised in the federal proceeding. *Giulini v. Blessing*, 654 F.2d 189, 193 (2d Cir. 1981). Here, as noted in text *supra*, the Section 392 proceeding raises factual issues (*e.g.*, whether defendants notified the Bryants of their statutory right to a preremoval hearing to contest the decision to remove Kim, David, and Virginia from their foster care) and legal issues (*e.g.*, whether the federal constitution entitles the Bryants to such a preremoval hearing) that are raised in identical fashion by the Bryants' pending federal action. Where, as here, abstention on the parallel-state-proceeding theory is *permissible*, the factors that control a federal court's determination whether to exercise its discretion to order a stay of the federal action are: (1) considerations of comity; (2) promotion of judicial efficiency; (3) adequacy and extent of relief available in the alternative forum; (4) identity of parties and issues in both actions; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of parties, counsel, and witnesses; and (7) possibility of prejudice to a party as a result of the stay. *Leber-Krebs, Inc. v. Clinton*, 517 F.Supp. 593, 596 (S.D.N.Y. 1981); *Universal Gypsum, Inc. v. American Cyanamid Co.*, 390 F.Supp. 824, 827 (S.D.N.Y. 1975); *Nigro v. Blumberg*, 373 F.Supp. 1206, 1212–13 (E.D.Pa.1974). As is apparent . from the Court's discussion in text *supra*, the Court, upon weighing these factors according to the extent to which each is implicated by the instant case, believes that the balance comes down strongly in favor of staying the Bryants' federal action. Thus, even if *Pullman*-type abstention were for some reason impermissible here, the Court would exercise its discretion to order a stay under the parallel-state-proceeding theory of abstention.

[6] As noted, in order for the Court to find in the Bryants' favor on their constitutional claim, it would have to hold (1) that the removal of Kim, David, and Virginia from the Bryants' care deprived the Bryants of a constitutionally protected liberty interest and (2) that the Section 392 proceeding currently being afforded the Bryants does not satisfy the requirements of due process. Respecting the first point, in *Smith v. Organization of Foster Families for Equality & Reform, supra*, Justice Brennan, writing for himself and five other members of the Supreme Court, declared that a claim to a constitutionally protected liberty interest identical to that asserted here "raise[d] complex and novel questions" that prevented the claim from being summarily rejected. 431 U.S. at 847, 97 S.Ct. at 2111. Turning to the second point, while the Supreme Court has recently held that *negligent* deprivations of constitutionally protected interests may be cured by post-deprivation hearings, *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981), the Court notes that, in *Moore v. Sims, supra*, the four members of the Supreme Court who reached the issue agreed that an *intentional* deprivation of a constitutionally protected interest similar to the one alleged here could not be cured by an after-the-fact hearing. *See* 442 U.S. at 442 n.15, 99 S.Ct. at 2387, n.15 (Stevens, J., dissenting). This view accords with the general rule in such cases, which requires that "[b]efore a person is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing, 'except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" *Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)), *cited in Smith v. Organization of Foster Families for Equality & Reform, supra*, 431 U.S. at 848, 97 S.Ct. at 2111. Under these circumstances, this Court cannot possibly declare that the Bryants' constitutional claim is meritless on its face.

type abstention does not "involve the abdication of federal jurisdiction, but only the postponement of its exercise," *Harrison v. NAACP*, 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959), the proper course is not for the Court to dismiss the complaint/petition insofar as it is maintained under Section 1983, but to retain jurisdiction over this aspect of the action pending resolution of the unsettled question of New York law by the state courts. Accordingly, defendants' motions are denied insofar as they seek dismissal of plaintiffs' Section 1983 claims on grounds of abstention, and are granted, insofar as they seek, by their request for "such other and further relief as to this Court may seem just and proper," to have this action placed on the Suspense Docket of this Court. Defendants' motions are denied without prejudice insofar as they seek dismissal of the Bryants' Section 1983 claim for failure to state a claim upon which relief can be granted.

*Availability of Habeas Corpus Relief*

■ Defendants-respondents, to whom the Court shall refer simply as "respondents" in discussing the legal sufficiency of the complaint/petition as a petition for a writ of habeas corpus, proffer two theories in support of their argument that the complaint/petition must be dismissed insofar as it seeks a writ of habeas corpus. First, respondents contend that, given the pendency of the Bryants' Section 392 proceeding before the Family Court, the Bryants have not exhausted their state remedies. Second, respondents contend that federal habeas corpus is not available to challenge the procedures by which a state involuntarily terminates a foster parent's care of a foster child. Since the Court agrees that the Bryants are required to exhaust, and have not exhausted, their state remedies, it finds on this basis alone that respondents' motions should be granted insofar as they relate to the Bryants' request for a writ of habeas corpus. The Court, while noting that the weight of authority supports the principle that federal habeas corpus does not afford a remedy in child-custody cases such as this, *see Lehman v. Lycoming County Children's Services Agency*, 648 F.2d 135 (3d Cir. 1981) (en banc), *cert. granted*, ––– U.S. –––, 102 S.Ct. 89, 70 L.Ed.2d 82 (1981); *Sylvander v. New England Home for Little Wanderers*, 584 F.2d 1103 (1st Cir. 1978); *but see Davis v. Page*, 640 F.2d 599 (5th Cir. 1981) (en banc), *cert. requested*, 50 U.S.L.W. 3081 (May 7, 1981), thus does not reach respondents' second argument.

■ Assuming arguendo that 28 U.S.C. § 2241 is properly construed to afford a vehicle for presenting a claim such as the Bryants advance here, that vehicle only becomes available once the petitioner has exhausted available state remedies. *Huynh Thi Anh v. Levi*, 586 F.2d 625, 633 (6th Cir. 1978). The Court believes that the question whether the Bryants have exhausted their state remedies should be answered by reference to the exhaustion-of-state-remedies requirement imposed by 28 U.S.C. § 2254(b).[7]

7. Under 28 U.S.C. § 2254(b), "[a]n application for a writ of habeas corpus in behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." The Court recognizes that 28 U.S.C. § 2254(b) may not specifically apply here, because Kim, David, and Virginia may not be in the legal custody of the New York City Department of Social Services and Spence-Chapin "pursuant to the judgment of a State court." (A court order is not always required for a child to be voluntarily placed in foster care pursuant to N.Y.Soc.Serv.Law § 384–a or freed for adoption pursuant to N.Y.Soc.Serv.Law § 384. The record before the Court does not indicate whether Kim, David, and Virginia were either placed in foster care or freed for adoption pursuant to an order by a New York state court.) The Court's determination that the Bryants must exhaust state remedies is therefore not based on the language of 28 U.S.C. § 2254(b), but is founded instead on the Court's view that exhaustion of state remedies is always required in the federal habeas corpus context if, as here, the petitioner raises issues that touch important state interests. *See Ex parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 872 (1886) (imposing exhaustion-of-state-remedies requirement in absence of express statutory authority for doing so). Given the Court's conclusion that one must exhaust state remedies before filing a petition for a writ of habeas corpus

In this Circuit, the courts have adopted a two-stage inquiry for determining whether the exhaustion required by 28 U.S.C. § 2254(b) has occurred. First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he or she now urges upon the federal courts. *Barnes v. Jones*, 665 F.2d 427 at 431–432 (2d Cir. 1981). Second, having presented his or her federal constitutional claim to an appropriate state court, the petitioner must have utilized all available mechanisms to secure appellate review of the denial of that claim. *Klein v. Harris*, 667 F.2d 274 (2d Cir. 1981).

Here, the first prong of this test has been satisfied, since (1) the Bryants have, in proceeding before the Family Court by way of a Section 392 petition, presented their federal constitutional claim to an appropriate state court, and (2) the Family Court has denied the relief that is the subject of the federal constitutional claim raised by the Bryants' Section 392 petition. However, the second prong of the exhaustion-of-state-remedies test has not been satisfied here. The Bryants have not exhausted all appellate remedies available from the Family Court's denial of their federal constitutional claim. The Appellate Division's dismissal of the Bryants' appeal of the Family Court's order that denied the relief sought by the Bryants' federal constitutional claim was not on the merits, but for want of jurisdiction, on the ground that the Family Court's order was merely interlocutory. Thus, assuming that the Family Court does not alter its order in the meantime, the Bryants will have the opportunity, when the Family Court concludes the Section 392 proceeding, to secure appellate review from the New York state courts of the Family Court's order denying their federal constitutional claim. The Bryants having failed at this time, then, to exhaust their state remedies, respondents' motion to dismiss the complaint/petition on this ground is granted. The complaint/petition is hereby dismissed without prejudice insofar as it seeks a writ of habeas corpus.

such as the Bryants have filed here, the Court believes it is appropriate to determine whether the requisite exhaustion has occurred by refer-

## CONCLUSION

The Bryants' application for an order granting the relief sought by the complaint/petition, which the Court has treated as a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., is denied. Defendants-respondents' cross-motions, pursuant to Rule 12(b)(6), Fed.R.Civ.P., for an order dismissing the complaint/petition are granted in part and denied in part. The complaint/petition is dismissed without prejudice insofar as it seeks a writ of habeas corpus. The action is placed on the Suspense Docket of this Court insofar as the complaint/petition seeks relief under 42 U.S.C. § 1983.

It is so ordered.

ence to the exhaustion-of-state-remedies test developed under 28 U.S.C. § 2254(b).