Joseph P. Kuszynski, J.
The plaintiff herein, Colgate-Palmolive Company (Colgate), seeks a preliminary injunction restraining the County of Erie from enforcing section 2(b) of its Local Law No. 8 of the Local Laws of 1971 which prohibits after *705 January 1, 1972, the sale within Erie County of synthetic detergents containing any phosphorous components.
Leave is granted to the Attorney-General of the State of New York to intervene pursuant to CPLR 1012 (suhd. [a], par. 2). As to the Environmental Defense Fund, Inc., and the Center for Justice Through Law, Inc., leave is extended to each to appear amicus curiae since the issues raised in this proceeding involve important questions of public interest. (See Matter of Colmes v. Fisher, 151 Misc. 222; Kemp v. Rubin, 187 Misc. 707; Ladue v. Goodhead, 181 Misc. 807.)
On March 16, 1971, the Legislature of the County of Erie enacted Local Law No. 8 “ A Local Law Prohibiting the Sale of Certain Detergents Containing Phosphorous.” (County Law). It contains the specific legislative finding that “ The waters of Erie County, particularly those of Lake Erie and its tributaries are being seriously polluted by the continuous discharge into such waters of phosphorous contained in detergents which fertilize excessive algae growth,” and declared as county policy that ‘ ‘ to abate and control the pollution of the waters of Erie County, in the public interest it is necessary to insure that the ingredients of detergents which are sold, or offered for sale in Erie County do not contribute to the pollution of such waters. ’ ’ Section 2 (a) regulates the sale and use of detergents containing phosphorous to 8.7% by weight since April 30, 1971, while section 2 (b) of said County Law makes it unlawful to offer, sell, give or furnish a detergent containing any phosphorous within the county after January 1, 1972.
Colgate maintains that irreparable harm will inure to it if the impending county imposed phosphate ban is not stayed. Basically, its claims of possible damage are of a financial nature arising from the contemplated loss of revenues due to the prohibition of any further phosphate-based detergent sales while additional expenditures will be incurred to produce phosphate-free products.
The County Law took cognizance of the need of allowing a reasonable time for the change-over by the detergent industry and gave Colgate as well as the other suppliers of detergents over nine months’ time to put their affairs in order in Erie County. It must be noted that none of the other detergent manufacturers have joined in this proceeding nor have any initiated separate proceedings for a stay, therefore, it must be reasonably assumed that they intend to comply with the ban.
In considering petitioner’s claim of possible harm it is incumbent upon this court to consider too, in the counterbalance, *706 respondents’ assertions that the health, safety and welfare of the people of Erie County will be adversely affected if a stay in the enforcement of the phosphate ban is granted. The respondents maintain that the overwhelming weight of scientific evidence is that phosphorous in the detergents is one of the principal causes of increased cultural eutrophication now taking place in many of our lakes and streams. Cultural eutrophication is the process which turns lakes into swamps and normally takes millions of years; however, this process has been accelerated into less than a century by the addition of phosphates which trigger the excessive ¡algae growth.
Dr. Joseph Puleo, Director of the Public Health Division, Erie County Laboratory, in his affidavit in support of the county’s position, states that as a result of the operation of the first phase of the County Law, phosphate deposits decreased noticeably in Erie County streams since the enactment of the County Law under review. He stated “ that 50% of phosphates in our waters and 80'% of the phosphates passing through our sewage treatment plants come from laundry detergents.”
Colgate further alleges that the County Law in question is unconstitutional as it imposes an unreasonable burden upon interstate commerce in violation of the “ Commerce Clause” (U. S. Const., art. I, § 8, cl. 3). This argument falls of its own weight in view of Huron Cement Co. v. Detroit (362 U. S. 440) and South Pacific Co. v. Arizona (325 U. S. 761).
The primary burden which is placed upon the petitioner Colgate involves nothing more than the changing of production facilities at the point of origin. There is no interference mandated by the County Law with transit across the State lines and the fact that other detergent suppliers will be able to comply is indicative of the fact that the burden imposed is not an unreasonable one but one which can be reasonably met. There is no discrimination as to Colgate, the ban applies to all detergent manufacturers and the petitioner is placed in the same competitive position as all other detergent manufacturers. This very argument of local environmental legislation being burdensome upon interstate commerce has been rejected twice in the recent months by the Federal Judiciary. (Soap & Detergent Assn. v. Offut, S. D. Ind., Aug. 31, 1971; Soap & Detergent Assn. v. Claris, 330 F. Supp. 1218.)
Finally, Colgate contends that the County Law is invalid as it allegedly is in conflict with the New York State Environmental Conservation Law (§ 17) (State law) enacted by the State Legislature on June 4, 1971 which imposes State-wide *707 controls on the sale and use of phosphated detergents but on a different timetable. Under the State law only those detergents which contain phosphorous of not more than 8.7% by weight will be permitted within the State after December 31, 1971 and phosphate-based detergents will be banished after June 1, 1973.
Both the State and the county legislations have been passed to solve an environmental problem. Both legislative bodies have determined through legislation that the most effective way of handling excessive cultural eutrophication is by prohibiting the use of phosphate in detergents. Both have engaged a two-step process and both have set identical levels of phasing out the use of phosphates in detergents, the first phase permitting the use of 8.7% of phosphate content and a total prohibition in the second phase. The only difference between the two is the time compliance schedule.
Said subdivision (7) of section 17 of the Environmental Conservation Law further provides: “By the enactment of this section, the state fully exercises the exclusive right to regulate and control the labelling and ingredients of household cleansing products distributed, sold, offered, or exposed for sale in this state, within the scope and limitations of this section. The terms ‘ regulation ’ and ‘ control ’ include prohibitions or other restrictions on the distribution, sale, offering or exposing for sale of such products in this state. In order to assure statewide uniformity, such regulation and control by any political subdivision of the state of such products is prohibited on or after the effective date of this subdivision provided, however, that any such regulation and control in effect on June first, nineteen hundred seventy-one shall be unaffected by this subdivision.” (Italics supplied.)
Colgate maintains that the total ban as decreed under the County Law is invalid because it becomes operative after June 1, 1971, the date of pre-emption of control by the State, and thereby conflicts with the State law.
The presumption is in favor of the constitutionality of a law. (Oriental Blvd. Co. v. Heller, 27 N Y 2d 212.) Although the legislative history of chapter 716 of the Laws of 1971, which added section 17 to the Environmental Conservation Law does not identify the “local regulation and control” in effect on June 1, 1971 which was intended to be saved from pre-emption by the State, there is reason to conclude as Colgate contends, that the saving clause intended under the original draft introduced on March 2, 1971, to leave intact the legislation adopted earlier by Suffolk County on February 23, 1971 which prohibited *708 since March 1, 1971 all synthetic laundry and dishwashing detergents containing phosphate components in Suffolk County. However, there is no basis on the other hand, to infer that the State Legislature was not aware of and did not intend to include Erie County’s Local Law in the saving clause when it adopted the State law on June 4, 1971 some two and a half months after the enactment by Erie County of its local law.
The conjunctive joinder of the two terms “ regulation and control ’ ’ used by the State Legislature in the saving provision of the State law, is indicative of its intent to have a local law regulating and controlling the sale of phosphated detergents looked at m toto in examining it under the light of an exception to State control.
The County Law was in operation on June 1, 1971 and since the State law excludes from its pre-emption and leaves intact “ any such regulation and control in effect on June first, nineteen hundred seventy-one ” therefore, the County Law under review is not in conflict but is compatible with the State law.
Erie County Local Law No. 8, 1971 which regulated and controlled the use of phosphate-based detergents in Erie County on June 1, 1971 survives pre-emption by the New York State Environmental Conservation Law as it squares in all respects with its saving provision.
Colgate’s petition for a temporary injunction is in all respects denied.