Chief Judge Ftjld.
At issue on this appeal is the validity of a 1971 village ordinance which provides that abortions be performed only in hospitals licensed and accredited by the State.
*349 In 1970, by chapter 127 of the Laws of 1970, the State Legislature amended section 125.05 (subd. 3) of the Penal Law, entitled “Justifiable abortional act”, to provide that “ [t]he submission by a female to an abortional act is justifiable when she believes that it is being committed by a duly licensed physician, acting under a reasonable belief that such act is necessary to preserve her life, or, within twenty-four weeks from the commencement of her pregnancy.” On March 17, 1971, the Incorporated Village of Hempstead enacted an ordinance entitled “Pregnancy Termination Facilities ” (Code of Ordinances, ch. 7, art. VI), which reads as follows (§ 7-90):
“Notwithstanding any other law, statute, ordinance or other regulation, ‘ Justifiable abortional acts ’, as defined in the Penal Law of the State of New York, shall be performed only in a hospital duly licensed and accredited under the New York State Department of Health, and having equipment and facilities acceptable to the State Hospital Review and Planning Council.”
In the first-named suit, Charles Robin, a physician specializing in obstetrics and gynecology who has performed numerous “ justifiable ” abortions at his office in Hempstead, seeks a judgment declaring the ordinance unconstitutional and invalid. In response, the defendant village, urging that the ordinance is a lawful exercise of the police power, requests an injunction restraining the plaintiff from performing abortions except in hospitals which meet the requirements of the ordinance. In the second action, the village seeks an injunction restraining the defendant Bill Baird Center — a family planning and birth control center where Dr. Robin has an office—from carrying on such operations in its premises. It is conceded by all of the parties that the center “ is a facility other than a hospital ” and, accordingly, does not satisfy the requirements of the ordinance.
The Supreme Court, Nassau County, consolidating the two actions, declared the village ordinance valid and enjoined the plaintiff Dr. Robin and the defendant center from violating it. On appeal, the Appellate Division reversed, holding that “enactment of [the] ordinance was outside the scope of the powers of a village ” (38 A D 2d 758).
*350 There can be no doubt that the State has reserved to itself regulation of the practice of medicine in general and of the performance of abortions in particular.[1] Not only does the State Education Law provide, in detail, for the regulation of medicine and the supervision of physicians in their practice (art. 131, § 6520 et seq.) but, even more to the point, the Legislature has declared in the Public Health Law (art. 28, § 2800) that, “ [i]n order to provide for the protection and promotion of the health . of the inhabitants of the state * * * the department of health shall have the central, comprehensive responsibility for the development and administration of the state’s policy with respect to hospital and related services, and all public and private institutions, whether state, county, municipal * * * serving principally as facilities for the prevention, diagnosis or treatment of human disease * * * or physical condition * * * shall be subject to the provisions of this article.” And, following amendment of the Penal Law dealing with abortions, the State Department of Health amended the State Hospital Code, pursuant to section 2803 of the Public Health Law, in order to authorize and regulate the performance of abortions in both “ hospitals ” and 11 independent out-of-hospital health facilities] ” (see, e.g., 10 NYCRR 720.7[p], 720.18[j] [2], 751.9 [b]).
Regard for both the above-quoted declaration of policy and for the legislative scheme demonstrates the State’s purpose and design to pre-empt the subject of abortion legislation and occupy the entire field so as to prohibit additional regulation by local authorities in the same area. (See, e.g., Good Humor Corp. v. City of New York, 290 N. Y. 312, 316-317; People v. Lewis, 295 N. Y. 42, 51; Wholesale Laundry Bd. of Trade v. City of New York, 11 AD 2d 327, 330, affd. 12 N Y 2d 998; Kim v. Town of Orangetown, 66 Misc 2d 364, 370-371.)
Such State policy being expressed, a village or other municipality lacks authority to deal with the matter ‘1 ‘ unless it is *351 specifically empowered so to do in terms clear and explicit.’ ” (Matter of Kress & Co. v. Department of Health, 283 N. Y. 55, 60; Jewish Consumptives’ Relief Soc. v. Town of Woodbury, 230 App. Div. 228, 234, affd. 256 N. Y. 619; see Kim v. Town of Orangetown, 66 Misc 2d 364, 372, supra.) As is manifest, no such clear and explicit authority exists in the case before us.
The village does, it is true, have the general power to 1 ‘ enact any ordinances, not inconsistent with existing law 'which shall be deemed expedient or desirable for the * * * health of its inhabitants ” (Village Law, § 89, subd. 59) but such a general grant ‘ ‘ is not a delegation to a municipal corporation of the entire police power of the state and is limited to matters of an inherently local nature. ” (6 McQuillin, Municipal Corporations [1969 rev. ed.], § 24.45, p. 568; see, also, Matter of Kress & Co. v. Department of Health, 283 N. Y. 55, 59, supra; Adler v. Deegan, 251 N. Y. 467, 489-491, per Cardozo, Ch. J., concurring.) This court has expressly declared that local health regulations — relating, for instance, to the manufacture and sale of food— may be enacted by a municipality, in spite of general State regulation, only if there exists 11 a real distinction between the city and other parts of the State. They [local regulations] must be based upon special conditions existing in the city.” (Matter of Kress & Co. v. Department of Health, 283 N. Y. 55, 59, supra.) It is hardly necessary to remark, however, that there are no “ special conditions ” concerning the performance of abortions in the Village of Hempstead, as opposed to the rest of the State, which warrant enactment of the local ordinance.[2]
It is also worth noting that section 125.05 of the Penal Law was specifically amended to define a “ justifiable abortional act ” *352 and that no reference was made to the place where such act must be performed. Significantly, prior to amending the statute, the Legislature had before it two bills which expressly provided that an “ abortional act is not criminal, and thus is legally justifiable, when performed in a hospital which has been certified” under provisions of the Public Health Law (see 1970 Assembly Int. No. 8; Senate Int. No. 3500). Neither of these bills became law. Thus, although the Legislature was aware of the additional restrictions that were urged and could have been placed in the abortion law (see, also, Hawaii Revised Statutes, § 453-16, requiring that all abortions be performed in licensed hospitals), it nevertheless enacted a statute without the restrictions sought to be imposed by the village.
We recognize, of course, that considerations of health and safety may well lead to the conclusion that abortions should be performed in hospitals. There is no doubt that the State could impose such a restriction. All that we are now deciding is that the Village of Hempstead lacked the power to enact the ordinance before us.
The order appealed from should be affirmed, with costs.
Judges Bergan, Breitel, Jasen and Gibson concur with Chief Judge Fuld; Judge Burke concurs without accepting chapter 127 of the Laws of 1970 as a valid exercise of legislative power; Judge Scileppi dissents and votes to reverse.
Order affirmed.

. That the performance of abortions involves the practice of medicine may not seriously be disputed. Thus, chapter 127 of the Laws of 1970—which, as already indicated, amended the abortion law and prompted the enactment of the ordinance here challenged — is .entitled, “An Act to amend the penal law, in relation to justifiable abortional acts by physicians in the course of their practice of medicine.” (Emphasis supplied.)

. Some of the “ special conditions ” which do justify local regulation are found by examining the present ordinances of the Village of Hempstead. “ Health and Sanitation ” are regulated by chapter 7 of its General Ordinances and articles II through V of the chapter deal with “ Garbage, Rubbish, Refuse or Ashes ”, “ Clearance of Brush and Like Matter ”, “ Littering ”, and “ Protection of Public Water Supply.” Such regulation is traditionally local, since it is “intimately connected with the exercise by the city of its corporate functions”. (Adler v. Deegan, 251 N. Y. 467, 489, supra.) It is obvious, though, that the nature of article VI of chapter 7, dealing with “ Pregnancy Termination Facilities ”, is markedly different from that of the other articles. In point of fact, the trial judge admitted that he was “ unaware of any other instance in which a municipality has seen fit to restrict the performance of a surgical procedure to a hospital ”.