JANCYN MANUFACTURING
CORP., Plaintiff,

v.

The COUNTY OF SUFFOLK,
Defendant.

No. 82 Civ. 2276.

United States District Court,
E.D. New York.

April 6, 1984.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff Jancyn Manufacturing Corporation ("Jancyn") brings this action challenging the constitutionality of Local Law No. 12 of 1980 (hereinafter "Local Law No. 12" or "Local Law 12–1980")[1] promulgated by defendant, the County of Suffolk, and known as "Local Law Prohibiting the Sale of Certain Cesspool Additives in the County of Suffolk." Jurisdiction is predicated on 28 U.S.C. §§ 1331 and 1332.[2] Plaintiff has alleged five causes of action as follows: (1) the local law deprives plaintiff of its civil rights in that it is unconstitutionally vague; (2) plaintiff is deprived of its civil right to sell certain of its products in Suffolk County because the local law was enacted without authority by the defendant, and conflicts with and is superseded by Article 39 of New York's Environmental Conservation Law; (3) the local law is invalid due to defendant's failure to comply with the requirements of the New York State Environmental Quality Review Act; (4) enforcement of the local law denies plaintiff due process of law and is "wholly arbitrary and capricious," in that it prohibits the sale of plaintiff's products, yet permits the sale of other products containing the same compounds; and (5) defendant's failure to enforce the local law uniformly denies plaintiff equal protection and due process of law. For these reasons, plaintiff seeks a declaration that Local Law 12–1980 is null and void, an injunction against the enforce-

A. Thomas Levin, Jaspan, Kaplan, Levin & Daniels, Garden City, N.Y., for plaintiff.

Jane E. Conway, David J. Gilmartin, Suffolk County Atty., Hauppauge, N.Y., for defendant.

1. The relevant provisions of Local Law No. 12 are set forth on page 1367 and in footnote 4 of this opinion *infra.*

2. 28 U.S.C. § 1332 provides for federal jurisdiction in cases where there exists diversity of citizenship. The plaintiff herein is a Georgia corporation. Defendant Suffolk County, a municipality, is a citizen of New York for diversity purposes. *See, e.g., Byram River v. Village of Port Chester,* 394 F.Supp. 618, 624 (S.D.N.Y. 1975); 4 Wright & Miller, *infra,* § 1110 at 437 & n. 13. As the amount in controversy exceeds the statutory amount of $10,000, plaintiff has properly established federal jurisdiction under § 1332.

Plaintiff has also invoked federal question jurisdiction pursuant to 28 U.S.C. § 1331, alleging a denial of its civil rights under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

ment of the local law, damages in the amount of $10,000,000 and a declaration that plaintiff may sell certain of its products in Suffolk County.

■ Currently before me is plaintiff's motion for judgment on the pleadings as to its first two causes of action pursuant to Fed.R.Civ.P. 12(c) or, in the alternative, partial summary judgment on those two causes of action pursuant to Fed.R.Civ.P. 56(c). Defendant has opposed this motion and cross-moves for leave to amend its answer to add two affirmative defenses: that the complaint fails to allege sufficiently a violation of constitutional rights and that plaintiff's suit is barred by the doctrines of *res judicata* and collateral estoppel. Pursuant to Fed.R.Civ.P. 12(c), because "matters outside the pleadings have been presented to and not excluded by the court," plaintiff's motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. For the reasons set forth herein, I abstain from deciding plaintiff's motion for summary judgment pending a determination as to plaintiff's second cause of action by the state court. *See Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).[3] In addition, defendant's motion to amend its answer to add the defense of failure to state a violation of constitutional rights is granted; as to the defense of collateral estoppel and *res judicata,* the motion to amend is denied.

*Facts*

The material facts underlying the instant action are not in dispute. At the center of controversy is the unique nature of the water resources of Long Island, i.e., the Counties of Nassau and Suffolk. The groundwaters of Long Island have been federally designated as a "sole source acquifier;" that is, these counties possess an acquifier, or water table, that constitutes "the only or primary drinking water source for the area, and which, if contaminated,

would create a significant hazard to public health." N.Y.Envtl.Conserv.Law § 15-0514(1)(d) (effective on the 180th day after August 8, 1983). This situation exists because the groundwater of Long Island is replenished only by precipitation. The movement of precipitation through the soil to recharge the underground water table is slow and is, therefore, more susceptible to contamination on its way to the water table.

In the instant dispute, Jancyn, a Georgia corporation, is engaged in the manufacture, sale and distribution of various products, including several cesspool additive products. Prior to and during the early part of 1980, plaintiff freely sold certain of its cesspool additive products in Suffolk County, including the formulas known as "Drainz" and "Super Strength Drainz."

On or about April 8, 1980, the County Legislature of defendant Suffolk County enacted Local Law No. 12 to regulate the sale and use of cesspool products within the County. This law required approval by the County Commissioner of the Department of Health Services ("the Commissioner") prior to the sale or other distribution of cesspool additives in Suffolk County. The operative sections of the statute provide as follows:

*Section 3. Prohibition of Sale.* No person shall sell, exchange, give, dispose of to another, offer or agree to do the same, any organic chemical(s) or compound(s) for the purposes of cleaning or unclogging sewer lines and/or individual sewage disposal systems unless approval is first obtained from the commissioner.

*Section 4. Prior Approval of Cesspool Additives Required.* Before any cesspool additive is offered for sale in Suffolk County, approval must first be obtained from the commissioner *by submitting scientific data which is considered satisfactory to the commissioner,* demonstrating that the organic chemical(s) or compound(s) which is to be sold for the

---

**3.** Although neither party to this action has raised the issue of abstention, the court is empowered to do so *sua sponte. Naylor v. Case &*

*McGrath, Inc.,* 585 F.2d 557, 563 (1978), *citing Bellotti v. Baird,* 428 U.S. 132, 143 n. 10, 96 S.Ct. 2857, 2864 n. 10, 49 L.Ed.2d 844 (1976).

purposes of cleaning or unclogging sewer lines and/or individual sewage disposal systems *will not adversely affect the groundwaters.*

(relevant portions emphasized). In addition to its requirement of prior approval by the Commissioner, the local law provides for criminal and civil penalties for violation of section 3 or 4, and permits the County to enforce the local law in any court of competent jurisdiction.[4] Plaintiff alleges that no specific standards or procedures for the use or sale of the regulated products were promulgated at the time of the enactment of the statute or when it was approved by the County Executive on May 8, 1980.[5] The law became effective August 12, 1980.

Shortly after the enactment of Local Law No. 12, plaintiff and defendant engaged in a series of correspondence and interactions regarding the applicability of the law to plaintiff's products. On or about May 15, 1980, plaintiff requested approval from the Commissioner for the continued sale in Suffolk County of "Drainz" and "Super Strength Drainz" and submitted a list of the chemicals constituting these products. On June 9, 1983, the Commissioner wrote plaintiff's president, Richard W. Budd, directing plaintiff to comply with its burden of proving that its products would not "adversely affect the groundwa-

ters," as required by section 4 of the new law. The letter stated in relevant part:

> If you wish to continue selling cesspool products in Suffolk County [after the effective date of the statute], you must submit information concerning your products in accordance with Section 4 of the law .... We assume that you have tested your product(s) for effectiveness in unclogging cesspools. In carrying out that testing we further assume that you have collected information relating to the percolation of these ingredients in the groundwater. It is the latter test results which will be needed to assess your product(s) impact [sic] on the groundwater of Suffolk County and compliance with the law.

The letter further advised plaintiff that an application form including the procedure for approval would soon be sent to all known manufacturers of cesspool additives. By letter dated July 23, 1980, the Department of Health Services supplied these manufacturers with an application for a permit to market the regulated products in Suffolk County. Neither the letter nor the accompanying application stated any specific standard for determination of the acceptability of any additive product. Rather, the letter reiterated the legislative

---

**4.** In this regard, the relevant portions of Local Law No. 12 provide:

> *Section 5. Penalties for Violation.* Any person violating any provision of Sections 3 or 4 of this local law shall be deemed guilty of a violation as defined in section 10.00 of the penal law of the State of New York and subject to a fine of not more than two hundred and fifty dollars or by imprisonment for a term not to exceed fifteen days, or by both such fine and imprisonment.
> *Section 6. Civil Penalty.* For the violation of any of the provisions of this local law by any person, Suffolk County may impose a civil penalty in the amount of fifty dollars for each offense.
> *Section 7. Other Remedies.* Suffolk County may maintain an action or proceeding in any court of competent jurisdiction to compel compliance with or restrain any violation of this local law.

**5.** The relevant sections of the message of the County Executive accompanying the approval of Local Law No. 12 state:

> I have directed Health Commissioner Harris to prepare administrative regulations to implement the intent of this law. These procedures will include clear and simple methods by which manufacturers of products affected by the law will be able to present data to the Department of Health Services so that prompt determination can be made as to those products' continued sale in Suffolk County.
> I am asking Dr. Harris to set standards for testing and time deadlines for reply to manufacturers that give them a clear direction as to what will constitute acceptable product offerings in accordance with this law. Where there are no established New York State effluent standards or limitations, I have asked the Health Department to establish standards of an acceptable safe level for products present within water samples submitted for testing.

According to plaintiff, no standards or regulations to administer the local law were ever promulgated by defendant. Budd Aff., ¶ 11.

effect that "the local law places the burden of proof on industry to assure that cesspool additives do not adversely affect our groundwaters." The Department also noted its reservation of the right to reject any incomplete application forms.[6]

On or about August 6, 1980, plaintiff submitted the required application to defendant. In early August 1980, plaintiff alleges that it also reformulated Drainz to eliminate certain ingredients previously criticized as suspected carcinogens and notified the defendant County as to such reformulation.[7] A meeting between plaintiff and representatives of the defendant's Department of Health took place on August 20, 1980, at which the application was discussed. According to defendant, the application was incomplete, in that it did not contain sufficient data to assess the effect of plaintiff's products on the groundwaters of Suffolk County. Therefore, further information concerning biodegradability and toxicity of the chemical components of the products was requested. Plaintiff asserts that it was at the August 20 meeting that plaintiff was first informed that to be approved, the regulated products were subject to "additional requirements" such as biodegradability.[8] Soon thereafter, plaintiff supplied additional information to defendant which apparently still did not suffice for defendant to consider plaintiff's ap-

plication. Therefore, plaintiff was advised in September 1980 to remove its products from the market in Suffolk County, and these products were subsequently prohibited after September 15, 1980. These products, however, were not prohibited for sale in Nassau County, which shares the same acquifier as defendant Suffolk County.

On December 1, 1980, defendant's Department of Health Services granted plaintiff a six-month temporary permit to sell "New Concentrated Formula" Drainz and Super Strength Drainz in Suffolk County on condition that plaintiff perform and submit the results of a field test to demonstrate that these products would not adversely affect the groundwaters of the County. The Department informed plaintiff that such a time period would permit Jancyn, 'if it so desired,' "to perform a field study in Suffolk County to demonstrate that the parent compounds or their transformation products do not reach the groundwater." *Id.* On July 15, 1981, following the expiration of the temporary permit, plaintiff informed the Department of its conclusion that further testing of Drainz would be cancelled due to the expense of such testing.[9]

During this period of interchange between plaintiff and defendant concerning the application of Local Law No. 12 to the

---

6. The "Application to Market Cesspool Additive Products in the County of Suffolk" supplied by defendant to the relevant manufacturers requested the following information: name of product; name and address of manufacturer; whether product was currently on the market in Suffolk County and, if so, where it could be purchased; purpose of product; how product is designed to work (*e.g.,* decompose solids); directions for use (product label requested); ingredients (laboratory analysis requested); predicted environmental impact of product; compounds or conditions produced in septic system as result of use of product. Akras Aff., Exh. 4.

7. Plaintiff alleges that in 1977, defendant's legislature "embarked upon a campaign to destroy the market for Drainz by alleging that it contained two suspected cancer causing agents— 1,1,1 Trichloroethane and Methylene Chloride." Budd Aff. ¶ 5. Notwithstanding the allegations of intentional acts on the part of defendant, plaintiff reformulated Drainz and Super

Strength Drainz to eliminate these compounds. *Id.* at ¶ 13. It is the regulation of the reformulated products which are the subject of the instant suit.

8. Defendant contends, on the other hand, that plaintiff was aware of exactly what defendant would require in terms of independent scientific data. Defendant's Memorandum at 17. However, resolution is unnecessary for the purpose of adjudicating the instant motion. Also, the fact that the sale of Drainz-Mark II, an inorganic product manufactured by plaintiff, is permitted under Local Law No. 12 is irrelevant to the motion at bar. *See id.* at 3; Akras Aff. ¶¶ 14, 22.

9. The text of plaintiff's letter noting the discontinuation of testing added, "We still contend that sufficient and conclusive data has been submitted to coincide with the strict requirements on the Drainz formula which has already been approved under the New York law." *See infra* notes 10–11 and accompanying text.

sale or use of plaintiff's products in Suffolk County, the New York State Legislature enacted Article 39 of the State Environmental Conservation Law, N.Y.Envtl.Conserv.Law §§ 39–0101—39–0107 (1980) (hereinafter "ECL 39"). In enacting this statute, the legislature voiced its concern with the conservation of the groundwaters of Long Island shared by the defendant County when it enacted Local Law No. 12: "It is declared to be the public policy of this state to prevent the pollution of water resources in restricted geographical areas through the use of sewage system cleaners and additives by establishing a regulatory program restricting the use of such products." N.Y.Envtl.Conserv.Law § 39–0101. The statute defined "restricted geographical areas" as Nassau and Suffolk Counties, *id.* at § 39–0103(5). The operative provisions of ECL 39 state:

§ 39–0105. *Prohibition of sale and use*

1. No person shall distribute, sell, offer or expose for sale in restricted geographical areas any sewage system cleaner or additive containing any restricted mechanical [sic] matter in excess of one part per hundred by weight.

2. No person shall use, introduce or apply or cause any other person to use, introduce or apply in any sewage system, surface waters, or groundwaters in restricted geographical areas any sewage system cleaner or additive containing any

restricted chemical material in excess of one part per hundred.

The state statute also specifically defined the "restricted chemical material" to be regulated therein.[10] ECL 39 became effective on September 28, 1980, nearly seven weeks after the effective date of Local Law No. 12. By letter dated October 23, 1980, the New York State Department of Environmental Conservation ("NYSDEC") informed plaintiff that Drainz and Super Strength Drainz were acceptable under ECL 39, which as stated *supra,* applies only to Nassau and Suffolk counties.[11] Notwithstanding approval by the Department under ECL 39, however, certain of plaintiff's products continued to be prohibited in Suffolk County in spite of numerous efforts by plaintiff to comply with Local Law No. 12. *See supra* pp. 1368–1369. Plaintiff therefore instituted the instant action.

*Preliminary Issues*

■ Before evaluating the merits of the instant motion, I must address defendant's contentions that this instant action is barred by the doctrines of *res judicata* and collateral estoppel. I find both of these arguments to be without merit.

Defendant asserts that the constitutionality of Local Law No. 12 was earlier considered and the statute upheld in *Chloroben Chemical Corp. v. County of Suffolk,*

---

**10.** The reference to restricted "mechanical" material in § 39–0105(1) appears to be a typographical error in light of the other sections of article 39 which refer to restricted "chemical" material. The nature of such restricted material is specifically defined in § 39–0103(4), which provides:

Restricted chemical material means (a) any halogenated hydrocarbon chemical (aliphatic or aromatic) including but not limited to trichloroethane, tetrachloroethylene, methylene chloride, halogenated benzenes, carbon tetrachloride, or (b) any aromatic hydrocarbon chemical including but not limited to benzene, toluene, naphthalene, or (c) any halogenated phenol derivative in which the hydroxide group and two or more halogen atoms are substituted onto the aromatic carbons of a benzene ring including but not limited to trichlorophenol, pentachlorophenol, or (d) acrolein, acrylonitrile or benzidine.

**11.** The text of the letter from the NYSDEC, attached to the Budd Aff. as Exh. F, states in relevant part:

Based upon information you have supplied to this Department, and Nassau County Department of Health analysis of one can of your product, it would appear that your new formulations of Drainz and Super Drainz [sic] are not prohibited from sale under Article 39. *However, these products have not yet been approved for sale in Suffolk County in accordance with Local Law 12–1980....* Therefore, barring future Department findings to the contrary, the new formulations of Drainz and Super Drainz may be sold in Nassau County (*and in Suffolk County, if and only if approved for sale by that County in the future*)....

(emphasis added).

No. 80–17584 (Sup.Ct. Suffolk Co. Sept. 23, 1980), Arkas Aff., Exh. 1, and *Jancyn Manufacturing Corp. v. County of Suffolk*, No. 81–10484 (Sup.Ct. Suffolk Co. June 4, 1981), Arkas Aff., Exh. 2. Both decisions are, however, inapplicable. In *Chloroben*, the court denied plaintiff's motion for a preliminary injunction barring application of the statute as unconstitutionally vague. In denying the motion, the court specifically stated that the question before it was *"not* whether Local Law # 12–1980 is constitutional or unconstitutional, but whether plaintiff has satisfied the statutory prerequisites for this court to grant a preliminary injunction against the enforcement of this local law" (emphasis added). The court found that plaintiff had not met its burden of establishing a likelihood of success on the merits, irreparable injury or a balance of equities in its favor. The constitutionality of Local Law No. 12 was therefore not determined by the court.

In the *Jancyn* case before the state court, the plaintiff now before me brought an Article 78 proceeding to compel defendant's Department of Health to approve plaintiff's protocol for testing Drainz and Super Strength Drainz, extend the period of time for plaintiff to test its products for at least eight months, and permit plaintiff to sell these products in Suffolk County in the interim. The petition was dismissed upon a finding by the Court that defendant was not legally obligated to comply with plaintiff's requests. Again, the constitutionality of Local Law No. 12 was not evaluated. Indeed, while an Article 78 petition may sometimes be treated as an action for declaratory judgment so that, for example, the constitutionality of a statute may be considered on its merits, "it has been consistently held that a [N.Y.] CPLR Article 78 proceeding may not be utilized as a device by which to test the constitutionality of legislative enactments." *Ames v. Smoot*, 98 A.D.2d 216, 225, 471 N.Y.S.2d 128, 134 (2d Dep't 1983) (Weinstein, J. dissenting); *see also id.,* 98 A.D.2d at 217; 471 N.Y.S.2d at 130 (see cases cited therein). Because the *Jancyn* proceeding before the State Supreme Court was neither converted into a declaratory judgment action, nor in any way considered the constitutionality of Local Law No. 12, I cannot find that that action bars plaintiff here based on either the doctrine of *res judicata* or collateral estoppel. I therefore turn to the issue of abstention.

*The Abstention Doctrine*

The judicially-created doctrine of abstention was first set forth by the United States Supreme Court in *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Under this doctrine, a federal court may decline to exercise jurisdiction when there exists an unsettled question of state law raised in connection with a federal constitutional claim, which, if resolved by the state court, "leads to an authoritative answer, rather than merely a forecast on the state questions, and depending on how the state questions are answered, may make it unnecessary to decide the federal constitutional issue." 17 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4241 at 433 (1978) (citations omitted) (hereinafter cited as "Wright & Miller"). As stated by the Court in *Public Utilities Commission of Ohio v. United Fuel Co.,* 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed. 396 (1943), "[w]here the disposition of a doubtful question of local law might terminate the entire controversy and thus make it unnecessary to decide a substantial constitutional question, considerations of equity justify a rule of abstention." *Id.* at 463, 63 S.Ct. at 373. Thus, abstention is appropriate "in cases where state law is (1) 'unclear' but (2) 'reasonably susceptible' of an interpretation that would make adjudication of plaintiff's federal constitutional claim unnecessary." *Bryant v. Commissioner of Social Services,* 530 F.Supp. 1175, 1182–83 (S.D.N.Y.1982), *citing Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 307, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895 (1979).

The fact that federal jurisdiction in this case is based on diversity as well as on the general federal question statute, 28

U.S.C. § 1331, does not preclude applicability of the abstention doctrine. *Clay v. Sun Ins. Office Ltd.*, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960); *United Gas Pipe Line Co. v. Ideal Cement Co.*, 369 U.S. 134, 82 S.Ct. 676, 7 L.Ed.2d 623 (1962). The same is true where there is reliance on civil rights statutes. *Harrison v. NAACP*, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); *Askew v. Hargrave*, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971).

The abstention rule is not, however, "an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers." *Baggett v. Bullitt*, 377 U.S. 360, 375, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377 (1964). The determination of whether "special circumstances" exist to warrant abstention must be made on a case-by-case basis. *Id., citing Propper v. Clark*, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949). While the Supreme Court has cautioned that "even in a *Pullman*-type case abstention was unwarranted when neither party requested it and when the litigation had already been long delayed," *Hostetter v. Idlewild Liquor Corp.*, 377 U.S. 324, 329, 84 S.Ct. 1293, 1296, 12 L.Ed.2d 350 (1964),[12] that ruling was made in a case where there was "no danger that a federal decision would work a disruption of an entire legislative scheme of regulation." *Id.* (citations omitted). As this Circuit has held,

> A plain limit on abstention is the case in which, although all circumstances would normally point to abstention, the issue involved is one on which the state law is clear, and the risk of rendering a decision that would be disruptive of the even development of state law can be excluded.

*Naylor v. Case & McGrath, Inc., supra* note 4, 585 F.2d at 565. However, as will be demonstrated below, the issue of whether ECL 39 preempts or supersedes Local Law No. 12 is not a matter on which state

law is clear. *Cf. Hassan v. Town of East Hampton*, 500 F.Supp. 1034, 1937 (E.D.N.Y.1980) (Pratt, J.) (where abstention was raised by the defendant in a case where plaintiff urged that ECL § 13–0311(1) preempted a local ordinance, district court refused to abstain, finding that state "clearly and specifically delegated regulatory power over the taking of shellfish" to certain towns in the N.Y. Town Law); *Matter of Oswego Barge Corp.*, 439 F.Supp. 312, 321 (N.D.N.Y.1977) (abstention unnecessary where under *any* state interpretation of ECL 71–1941, plaintiff could not recover). *See also The Dells, Inc. v. Mundt*, 400 F.Supp. 1293, 1298 (S.D.N.Y.1975) (abstention was appropriate where subject matter of the claim was local land use, "a subject peculiarly appropriate for the state courts").

Furthermore, abstention in the present case may very well obviate the need for this Court to review any of the constitutional challenges raised by plaintiff. *See Reetz v. Bozanich*, 397 U.S. 82, 86–87, 90 S.Ct. 788, 790, 25 L.Ed.2d 68 (1970) (abstention pending decision of a state issue by state court would be appropriate where state adjudication would conceivably avoid federal constitutional issue as well as "any possible irritant in the federal-state relationship"). Should the state court find that ECL preempts or supersedes Local Law No. 12, the local law will be declared invalid. Under such circumstances, plaintiff will be able to obtain relief in the state court and will be able to recommence distribution of certain of its products in Suffolk County.

*The New York Statutory Scheme*

In its instant motion, plaintiff contends that defendant initially lacked the authority to enact Local Law No. 12. Plaintiff's Memorandum of Law at 6–9. This issue in itself raises complex questions of state law wholly unrelated to the constitutional aspects of plaintiff's claims. An understanding of the statutory scheme is neces-

---

**12.** In *Hostetter,* the delay was occasioned by numerous trips taken between all levels of the federal court system by the appellee's motion to

empanel a three-judge court. 377 U.S. at 327 n. 4, 84 S.Ct. at 1295 n. 4.

sary in order to establish the need for abstention in the instant case.

The source of a municipality's authority to enact legislation is found in article 9 of the New York Constitution, which states in relevant part:

> In addition to powers granted in the statute of local governments or in any other law, (i) every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to its property, affairs or government, and (ii) every local government shall have power to adopt and amend local laws *not inconsistent with the provisions of this constitution or any general law* relating to the following subjects, whether or not they relate to the property, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such a local law relating to other than the property, affairs or government of such local government:
>
> \* \* \* \* \* \*
>
> (10) The government, protection, order, conduct, safety, *health* and well-being of persons or property therein.

N.Y. Const. art. 9, § 2(c) (emphasis added).

In addition, article 2 of the New York Municipal Home Rule Law provides further authority for local governments to enact laws in areas in which the state also legislates. In language similar to that of article 9, § 2 of the state constitution, N.Y.Mun. Home Rule Law § 10 provides that a county may enact legislation which does not conflict with the constitution or a general law if such local legislation relates to "protection and enhancement of its physical and visual environment" or the "government, protection, order, conduct, safety, health and well-being of persons or property therein." N.Y.Mun.Home Rule Law § 10(1)(ii)(a)(11), (12) (McKinney Supp. 1983). Subdivision 4 of § 10 further provides:

> 4. In the exercise of its powers to adopt and amend local laws, the legislative body of a local government shall have the power:
>
> (a) to delegate to any officer or agency of such local government the power to adopt resolutions or to promulgate rules and regulations for carrying into effect or fully administering the provisions of any local law. .

For the purposes of interpreting the above scheme, a "general law" is defined as "[a] law which in terms and in effect applies alike to all counties, all counties other than those wholly included within a city, all cities, all towns or all villages." N.Y. Const., art. 9, § 3(d)(1). A "special law," on the other hand, is "[a] law which in terms and in effect applies to one or more, but not all, counties, counties other than those wholly included within a city, cities, town or villages." *Id.*, art. 9, § 3(d)(4). In addition, the Appellate Division, Second Department, of the New York has recently stated in *Ames v. Smoot, supra:*

> As a word of art relative to the legislative powers of local governments, "inconsistent" refers both to cases of express conflict between local and State law such as local prohibition of what State law permits ... and to situations where statutory law evidences the State's intent to preempt local regulation .... Where a State law indicates a purpose to occupy an entire field of regulation, local regulations are preempted regardless of whether their terms conflict with provisions of the State statute or only duplicate them ....
>
> The intent to preempt may be deduced not only from express language providing for exclusivity, but also from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme ....

98 A.D.2d at 218–19, 471 N.Y.S.2d at 130–31 (citations omitted).

### A. General Law vs. Special Law

 Having set forth the basic points concerning state law preemption of a local law, I will now address a basic question of state law underlying the instant preemp-

tion issue. As stated *supra*, a municipality is empowered to enact legislation not inconsistent with a general law or constitution of the state. Because it follows that a municipality may enact legislation inconsistent with a special law, the general or special nature of ECL 39 must be determined prior to reaching the issue of preemption. I find that even this essential nature of ECL 39 would best be determined by the New York state courts.

It is true that on its face, ECL 39 appears to be a special law. Section 39–0103(5) specifically identifies the "restricted geographical areas" to be regulated under the law to be Nassau and Suffolk counties. It is notable, however, that the statute is specifically entitled, "Sewage System Cleaners and Additives Used in Restricted Geographical Areas," thereby implying that the regulated geographic area may be expanded to encompass regions other than the Long Island counties should the need to protect such groundwaters arise.

The New York courts have several times declared a state law apparently special in nature to be a general law for the purposes of preemption and home rule issues. In *Hotel Dorset Co. v. Trust for Cultural Resources*, 46 N.Y.2d 358, 385 N.E.2d 1284, 413 N.Y.S.2d 357 (1978), for example, the New York Court of Appeals found that a state statute apparently specifically tailored to provide benefits for the Museum of Modern Art was a general law because it applied to a class, "entry into which was governed by conformity to or compliance with specified conditions." 46 N.Y.2d at 373, 385 N.E.2d at 1291, 413 N.Y.S.2d at 364, *citing Farrington v. Pinckney*, 1 N.Y.2d 74, 78, 133 N.E.2d 817, 821, 150 N.Y.S.2d 585, 591 (1956). The *Dorset* court held "If the subject matter is of sufficient importance to the state generally, the legislation cannot be deemed a local law even though it deals directly with the affairs of a municipality." 46 N.Y.2d at 373, 385 N.E.2d at 1291, 413 N.Y.S.2d at 364 (citations omitted).

Similarly, in cases touching upon environmental concerns, the courts have some-

times held an apparently special law to be general. *See e.g., People v. Kelsey*, 112 Misc.2d 927, 447 N.Y.S.2d 637, 640 (Dist.Ct. Suffolk Co. 1982) (power to regulate local handling and shipping of shellfish in general law—ECL 11 and 13, known as Fish and Wildlife Law—is preemptive of local regulation); *City of New York v. Town of Colchester*, 66 Misc.2d 83, 85, 320 N.Y.S.2d 156, 160–61 (Sup.Ct.N.Y.Co.1971) ("in determining whether a law is general or local we look not only to the terms of the law, but also to its effect"). In *Colchester*, New York City challenged the allegedly "special" nature of a state law amendment requiring the City to remove snow from and sand roads leading to reservoirs in other counties. The court held that the law was general, because, in effect, it affected the health and safety of persons in several counties. 66 Misc.2d at 85–86, 320 N.Y. S.2d at 161. In addition, in *Sloup v. Town of Islip*, 78 Misc.2d 366, 356 N.Y.S.2d 742 (Sup.Ct. Suffolk Co.1974), the court held that articles 11 and 13 of ECL, which constitute the Fish and Wildlife Law, constitute a general law because, in part, these articles express statewide policy to regulate fish and game. 78 Misc.2d at 371, 356 N.Y.S.2d at 748. *See also State v. Trustees of the Freeholders & Commonalty of the Town of Southampton*, 114 Misc.2d 317, 322–23, 451 N.Y.S.2d 612, 616 (Sup.Ct. Suffolk Co.1982) *rev'd on other grounds*, App.Div., 472 N.Y.S.2d 394 (2d Dep't 1984) (enactment of fish and wildlife law is a general law due to its application to all inhabitants of the state).

In the instant case, it is unclear whether ECL 39, by its terms, is special or general in nature. Although the statute specifies its application to Nassau and Suffolk counties, the legislative findings of ECL 39 declare the public policy of the *state* "to prevent the pollution of water resources in restricted geographical areas." *See supra* p. 1369. While the location of the acquifier sought to be protected by ECL 39 is certainly "localized" in the Long Island counties, I find merit in plaintiff's argument that the regulation intended by ECL 39 is

*not* "of an inherently local nature." Plaintiff's Memorandum at 13.

It is true that the defendant herein has not contested plaintiff's contention that ECL 39 is a general law of New York State. However, this fact is not dispositive of the nature of the statute. As the state courts have had no opportunity to pass on this issue, I find that the general or special nature of ECL 39, being purely a matter of state law, would be best passed upon by the state courts of New York.

### B. *Preemption of Local Law No. 12 by ECL 39*

Assuming that ECL 39 is a general law of the State of New York, it is "unclear" whether that statute preempts or supersedes Local Law No. 12. *See Bryant, supra,* 530 F.Supp. at 1183. Plaintiff contends in part that if construed as part of ECL 15, the Water Resources Law, or ECL 17, Water Pollution Control, ECL 39 must preempt local law. Specifically, plaintiff urges that the language of ECL §§ 15–0103 and 17–0101 vest with New York State the sole power to regulate matters concerning the water resources of the state. Those sections provide:

§ 15–0103. Legislative Findings

Article 15 shall be construed and administered in the light of the following findings of fact:

1. The sovereign power to regulate and control the water resources of this state ever since its establishment has been and now is vested *exclusively* in the state of New York, except to the extent of any delegation of power to the United States

\* \* \* \* \* \*

§ 17–0101. Declaration of policy

It is declared to be the public policy of the state of New York to maintain reasonable standards of purity of the waters of the state consistent with public health and public enjoyment thereof, the propagation and protection of fish and wild life, including birds, mammals and other terrestrial and acquatic life, and the industrial development of the state, and *to* that end require the use of all known available and reasonable methods to prevent and control the pollution of the waters of the state of New York

(emphasis added).

As defendant points out, however, neither of these statutory provisions clearly preempts local legislation. Both articles, in fact, contain other sections in which the state encourages local participation in the regulatory scheme.[13] It is true that in

---

13. *See, e.g.,* N.Y.Envtl.Conserv.Law §§ 15–0315, 15–1101, 17–0303. Those sections provide in part:

§ 15–0315. Regulations with other governmental bodies and agencies.

1. In order to adequately protect the interests of the state in its water resources, the department is hereby authorized to:

a. Cooperate with the appropriate agencies of the federal government of this or other states, or any interstate bureau, group, division or agency with respect to the use of water from lakes, ponds, rivers and streams, which are without or wholly or partially contained within this state, and to endeavor to harmonize any conflicting claims which might arise therefrom.

\* \* \* \* \* \*

§ 15–1101. Legislative purposes.

In addition to the powers vested in the department by this article 15, and in order to stimulate and encourage local participation and assistance, comprehensive planning for the protection, control, conservation, development and beneficial utilization of the water

resources of the state may be undertaken as provided in title 11 of this article. Nothing contained herein shall be deemed to repeal, amend or modify the powers and duties of the department as now or hereafter provided by this article 15 or by any other statute or to repeal the procedures authorized thereby.

\* \* \* \* \* \*

§ 17–0303. General powers and duties applicable to portions of this article.

1. The provisions of this section shall apply only to titles 1 to 11, inclusive, and title 19 of this Article.

\* \* \* \* \* \*

5. It shall be the duty and responsibility of the department to:

a. Encourage voluntary cooperation by all persons in preventing and abating pollution of the waters of the state;

b. Encourage the formulation and execution of plans by cooperative groups or associations of municipalities, industries, and other users of the waters who, severally or jointly, are or may be the source of pollution in the same

several cases where a state statute promotes local cooperation with and participation in the regulatory scheme, a state statute has been held not preemptive of local legislation. *See, e.g., Monroe-Livingston Sanitary Landfill, Inc. v. Town of Caledonia,* 51 N.Y.2d 679, 684–85, 417 N.E.2d 78, 80, 435 N.Y.S.2d 966, 968 (1980) (ECL 27 expressly disclaimed any State purpose to preclude local regulation and intended to include local government participation); *Oriental Boulevard Co. v. Heller,* 27 N.Y.2d 212, 221, 265 N.E.2d 72, 76, 316 N.Y.S.2d 226, 231–32 (1970) (ECL 14(21) encouraging cooperation with local governments in area of air pollution regulation refuted plaintiff's preemption argument); *Niagara Recycling, Inc. v. Town of Niagara,* 83 A.D.2d 316, 330–31, 443 N.Y.S.2d 939, 949 (4th Dep't 1981) (ECL 27 expressly permits consistent local legislation); *Mobil Oil Corp. v. Town of Huntington,* 85 Misc.2d 800, 804, 380 N.Y.S.2d 466, 473 (Sup.Ct. Suffolk Co.1975) (ECL 17–1101 expressly allowed local regulation of nuisance and pollution).

In the instant case, it is not clear that ECL 39 should be construed as part of ECL 15 or 17, however. In enacting Article 39, the legislature must be deemed to have been aware of the comprehensive nature of articles 15 and 17 and must have intentionally enacted ECL 39 as a separate law. Unlike those prior enactments, ECL 39 has no provision allowing local regulation; nor does it expressly prohibit local regulation. As stated *supra* at 15–16, a state law may preempt local regulation expressly or implicitly, where the state has evidenced intent to occupy an area of law. *See, e.g., Ames v. Smoot, supra; People v.*

*DeJesus,* 54 N.Y.2d 465, 430 N.E.2d 1260, 446 N.Y.S.2d 207 (1981) (comprehensive state scheme regulating sale of alcoholic beverages preemptive); *Robin v. Incorporated Village of Hempstead,* 30 N.Y.2d 347, 285 N.E.2d 285, 334 N.Y.S.2d 129 (1972) (express state policy to regulate abortion preemptive of local legislation). In the case of the regulation of sewage system cleaners, it is quite possible that the State of New York intended to occupy fully the field of regulation. I note, for example, that the state legislature has enacted comprehensive provisions for the purpose of enforcing article 39. N.Y.Envtl.Conserv.Law §§ 71–3901–3907. In addition, the state has acted to prohibit the discharge of hazardous waste or substances over federally designated sole source acquifiers such as that in issue here. N.Y.Envtl. Conserv.Law § 15–0514. Also, ECL 17–0826 and 17–0828 effect further regulation of discharges affecting the groundwaters of the state.

I note also that plaintiff's proposed analysis of the relationship between ECL 39 and Local Law No. 12 is "reasonably susceptible" to an interpretation of preemption by the state courts. As stated by the court in *People v. Kelsey, supra,*

> As a general proposition, local laws and general state laws are not inconsistent when the local law does not prohibit what the state law permits nor allow what the state law forbids.... An exception to this general principle occurs when the legislature specifically and in clear and specific terms permits regulation by local authorities in a field occupied by the state .... The courts have consistently held that where the exten-

waters, for the prevention and abatement of pollution.

As further evidence that article 17 is not preemptive of local legislation, defendant cites the case of *Colgate-Palmolive Co. v. Erie County,* 39 A.D.2d 641, 331 N.Y.S.2d 95 (4th Dep't 1972), in which the court held that a county law prohibiting the sale of detergents containing phosphorous was not preempted by Article 17. While supporting that proposition, this authority must be qualified, however. In *Colgate,* the appellate court affirmed the denial of a preliminary injunction sought against enforcement of the local law. 68 Misc.2d 704, 327 N.Y.S.2d 488 (Sup.Ct. Erie Co.1971). The lower court found that the state statute, ECL 17(7), only prohibited local legislation in effect *after* June 1, 1971, 68 Misc.2d at 707–08, 327 N.Y.S.2d at 492. Because the Erie County law was enacted some two months prior to that date, it was not preempted by the state statute. Therefore, defendant's contention that *Colgate* supports the proposition that ECL 17 can never be preemptive is inapposite.

sion of the principle of a state law by means of a local law results in a situation where what would be permissible under the state law becomes a violation of the local law, the latter law is unauthorized .... When the state has surveyed the field and set up standards which are proper, these standards may not be made more vigorous or extensive by local authority.

112 Misc.2d at 929–931, 447 N.Y.S.2d at 639–40 (citations omitted). *See, e.g., Consolidated Edison Co. v. Town of Red Hook,* 60 N.Y.2d 99, 456 N.E.2d 487, 468 N.Y.S.2d 596 (1983) (local law that would permit denial of power plant application where applicant's contemplated activities could be "detrimental" to affected persons and properties impliedly preempted by and inconsistent with less restrictive state law); *Monroe Livingston Sanitary Landfill v. Town of Caledonia, supra,* 51 N.Y.2d at 683, 417 N.Y.2d at 80, 435 N.Y.S.2d at 968 ("a local law may be said to be inconsistent with a State Law because it prohibits something which the State Law would consider acceptable").

■ In the instant case, it is undisputed that state law, i.e., ECL 39, permits the sale of certain products of plaintiff which are currently prohibited by Local Law No. 12. *See supra* p. 1369 and accompanying notes. In a case where a locality purports to legislate in a field where the state has enacted general legislation, an inconsistent local ordinance will only be upheld where there exists a "real distinction" between the interests sought to be protected by both entities. *Robin v. Incorporated Village of Hempstead, supra,* 30 N.Y.2d at 351, 285 N.Y.2d at 287, 334 N.Y.S.2d at 132. *See also People v. Cook,* 34 N.Y.2d 100, 110–11, 312 N.E.2d 452, 458, 356 N.Y. S.2d 259, 267 (1974). It is arguable here that the interests of New York in enacting ECL 39 are identical to those of defendant in enacting Local Law No. 12. The state statute is geared toward protecting the groundwaters of Long Island; there has been no contention by defendant that its purpose in enacting the local law is in any way different. However, the disparate results observed upon application of the two statutes to plaintiff's products supports the interpretation that Local Law No. 12 is inconsistent with and preempted by ECL 39.

■ Plaintiff has contended in its Memorandum of law at 13:

Purity of the potable waters of the State constitutes a common problem not affected by the different locations of the source. Further, the underlying acquifier is at least common to both Nassau and Suffolk and not limited to the latter county alone. That the local legislation should be viewed as preempted and superseded by the State legislation is obvious when one considers that plaintiff's products can be lawfully purchased in adjoining Nassau County, and transported to Suffolk County, and used there. Further, plaintiff's products can be lawfully sold and used in Nassau County, which shares the same water acquifier with defendant Suffolk County. The common interest of the public in these municipalities make the regulation of products affecting the ground water supply a legitimate and proper matter of exclusive state concern, and not of local concern.

In view of the expressed state concern in regulating the purity of the groundwaters of Long Island, *supra* at 1368–1369, as well as the "purely local nature" of the subject matter of the local statute challenged herein, I find that the New York courts provide the most appropriate forum for adjudication of plaintiff's preemptive claim. The issue of preemption of Local Law No. 12 by ECL 39 is both "unclear" and "reasonably susceptible" to an interpretation finding in favor of preemption as required in *Bryant, supra.* Hence, should the state court find ECL 39 preemptive, I will not need to address the federal constitutional claims asserted by plaintiff. I will, however, maintain jurisdiction over the instant case pending a resolution of the preemption issue by the state courts. *Railroad Commission v. Pullman, supra,* 312

U.S. at 501–02, 61 S.Ct. at 645–46. In the interest of justice, such a state court proceeding should be brought with "reasonable promptness." *Id.* at 502, 61 S.Ct. at 646.

*Conclusion*

For the reasons stated above, I abstain from deciding plaintiff's motion for summary judgment on its first and second causes of action, pending a resolution by the state courts of the preemption issue raised in the second cause of action. Defendant's motion to amend the answer to add the defense of failure to state a claim of violation of constitutional rights is granted; as to the defense of collateral estoppel and *res judicata*, the motion is denied.[14]

See also, 11th Cir., 708 F.2d 627.

---

**14.** Pursuant to Fed.R.Civ.P. 15(a), leave to amend a pleading "shall be freely given when justice so requires." A defense of failure to state a claim, such as that essentially stated in defendant's proposed first affirmative defense, may be raised at any time, Fed.R.Civ.P. 12(h)(2), and may therefore be added to the Answer in the instant case. However, when an amendment to a pleading would be futile, leave to amend may be denied. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Because I have found that defendant's proposed defenses of collateral estoppel and *res judicata* lack merit, *see supra* pp. 1369–1370, amendment to include them would be futile. Therefore, notwithstanding plaintiff's consent to permit such amendment, Plaintiff's Reply Memorandum at 5, leave to amend to add the defense of collateral estoppel or *res judicata* is denied.